OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



November 10, 1999

The Honorable José R. Rodríguez
El Paso County Attorney
500 East San Antonio, Room 203
El Paso, Texas 79901

Opinion No. JC-0141

Re: Whether, following the termination of a tax increment financing reinvestment zone, a city may use unexpended monies in the tax increment fund to construct a public work or improvement outside boundaries of the former reinvestment zone (RQ-0089-JC)

Dear Mr. Rodríguez:

You ask whether, following the termination of a tax increment financing reinvestment zone created under chapter 311 of the Tax Code, a city may use unexpended monies in the tax increment fund to construct a public work or improvement outside the boundaries of the former reinvestment zone. We conclude that a city is not authorized under chapter 311 to undertake or complete a reinvestment zone project in a manner that is not consistent with the reinvestment zone board of directors' project and financing plans, which must provide for projects within the zone. Therefore, as a general matter, a city may not expend tax increment fund money after termination of a reinvestment zone to build an improvement outside the zone. However, the city may do so if, prior to the zone's termination, the reinvestment zone board of directors agreed to dedicate revenue from the tax increment fund to replace areas of public assembly, and if construction of the improvement is a cost of replacing an area of public assembly under section 311.010(b). *See* TEX. TAX CODE ANN. § 311.010(b), *as added by*, Act of May 24, 1989, 71st Leg., R.S., ch. 1137, § 22, sec. 311.010, 1989 Tex. Gen. Laws 4683, 4690.

You provide the following background information. The City of El Paso created a tax increment financing reinvestment zone under chapter 311 by ordinance in 1982. *See* Letter from Honorable José R. Rodríguez, El Paso County Attorney, to Honorable John Cornyn, Attorney General, at 2 (July 20, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. The board of directors of the zone adopted its first project plan in 1987, which was subsequently amended on several occasions. *See id.* The reinvestment zone's board approved a project that consisted of a series of monuments. *See id.* You state that in 1992, the city commissioned two monuments from an artist to be erected within the boundaries of the reinvestment zone. *See id.* Work has been completed on the first of the two monuments. *See id.* at 3. The city has not yet selected a site for the second monument. *See id.* The city and the other taxing units terminated the reinvestment zone in 1998. *See id.* at 5. The termination agreement charged the city with defeasing

the outstanding bonds and completing all or parts of identified projects, including the monument. *See id.* The termination agreement included the following provision:

> 1. The City of El Paso upon termination of the District will have sole responsibility for completing all or parts of the projects above-identified and to do so shall have sole use of funds remaining on hand for such purpose and shall have any and all rights with respect to such funds that previously could have been exercised by the City of El Paso and/or the parties acting individually or through the Board of Directors of the Tax Increment Finance District.

*Id.*

The city would now like to use unexpended monies in the tax increment fund to build the second monument outside the boundaries of the former reinvestment zone. *See id.* You ask the following questions about the city's authority to undertake the second monument:

> 1. May a public improvement project approved for location within a [reinvestment zone] during the existence of the [zone] be placed at a location outside the [zone's] geographic boundary following termination of such [zone]?
>
> 2. May the costs of a project so situated outside a former [reinvestment zone's] boundary be considered "project costs" as that term is defined in [section 311.002(1) of the Tax Code]?

*Id.*

Chapter 311 establishes a tax increment financing scheme in which "the existing tax revenues of each 'taxing unit' are frozen; the tax increment financing bonds are sold; the improvements are constructed; the 'blighted area' is revitalized; property values soar and ad valorem tax revenues increase. The increased tax revenues over and above the tax increment base are then used to retire the tax increment financing obligations." *El Paso Community College Dist. v. City of El Paso*, 698 S.W.2d 248, 250 (Tex. App.–Austin 1985), *rev'd on other grounds*, 729 S.W.2d 296 (Tex. 1986). Chapter 311 is the codification of former article 1066e of the Revised Civil Statutes,[1] which was

---

[1]*See* Act of May 1, 1987, 70th Leg., R.S., ch. 191, §§ 1 (adding title 3 to Tax Code), 12 (repealing former article 1066e), 13 ("no substantive change . . . is intended by this Act"), 1987 Tex. Gen. Laws 1410, 1466.

enacted to implement article VIII, section 1-g(b) of the Texas Constitution.[2]  Section 1-g(b) was added to the Texas Constitution in 1981[3] to provide an exception to the article VIII, section 1 "equal and uniform" taxation requirement, *see* Tex. Att'y Gen. Op. No. MW-337 (1981) at 5 (concluding that 1979 tax increment financing statute violated article VIII, section 1 because it "caus[ed] an unequal distribution of the ad valorem tax burden"), by expressly authorizing the legislature to permit a city to undertake tax increment financing by general law.

After a municipality has adopted an ordinance creating a reinvestment zone, *see* TEX. TAX CODE ANN. §§ 311.003-.006 (Vernon 1992),[4] and the participating taxing units have appointed the zone's board of directors, *see id.* § 311.009, the board is charged with adopting a "project plan" and a "financing plan," both of which must be approved by the city's governing board by ordinance, *id.* § 311.011(a), (d).  Section 311.011 states that the project plan must include, among other things, a map showing proposed improvements to and proposed uses of the real property in the zone. *See id.* § 311.011(b)(1).  The financing plan must include, among other things, a detailed list describing estimated project costs of the zone, *see id.* § 311.011(c)(1), and "a statement listing the kind, number, and location of all proposed public works or public improvements in the zone," *id.* § 311.011(c)(2).  The term "project costs" is defined in chapter 311 to mean "expenditures made or estimated to be made and monetary obligations incurred or estimated to be incurred by the municipality establishing a reinvestment zone that are listed in the project plan as costs of public works or public improvements in the zone, plus other costs incidental to those expenditures and obligations." *Id.* § 311.002(1); *see also id.* § 311.002(1)(A)-(K) (listing project costs).

Both the city and the zone's board of directors are authorized to enter into agreements to implement project plans. *See id.* §§ 311.008, .010(b) (Vernon 1992 & Supp. 1999).  In addition, the city creating the reinvestment zone may issue tax increment bonds or notes to finance improvements. *See id.* § 311.015(a) (Vernon 1992).  The proceeds of these bonds are to be used "to pay project costs for the reinvestment zone on behalf of which the bonds or notes were issued or to satisfy claims of the holders of the bonds or notes." *Id.*; *see also id.* § 311.015(k) (municipality may not issue bonds in an amount that exceeds the total cost of implementing the project plan for the reinvestment zone).

---

[2]*See* Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 4, § 4, 1981 Tex. Gen. Laws 45, 52 (enacting former article 1066e to take effect upon adoption of article VIII, section 1-g of the Texas Constitution).

[3]*See* Tex. S.J. Res. 8, 67th Leg., 1st C.S., 1981 Tex. Gen. Laws 295 (proposing adoption of article VIII, section 1-g of the Texas Constitution).

[4]Provisions of chapter 311 of the Tax Code were amended by several bills enacted by the 76th Texas Legislature. *See* Act of May 29, 1999, 76th Leg., R.S., ch. 983, §§ 1-8, 14, 1999 Tex. Sess. Law Serv. 3763 (amending sections 311.004, .009, .010, .011, .012, .0125, .013, and .018 of the Tax Code); Act of May 29, 1999, 76th Leg., R.S., ch. 1521, § 1, 1999 Tex. Sess. Law Serv. 5249 (amending section 311.008 of the Tax Code).  Because the reinvestment zone at issue was terminated in 1998, we refer to provisions of chapter 311 as they existed prior to their amendment in 1999, unless otherwise noted.

Subsection (e) of section 311.011 provides that a project plan may be amended according to the following procedures:

> The board of directors of the zone at any time may adopt an amendment to the project plan consistent with the requirements and limitations of this chapter. The amendment takes effect on approval by the governing body of the municipality. That approval must be by ordinance. If an amendment reduces or increases the geographic area of the zone, increases the amount of bonded indebtedness to be incurred, increases or decreases the percentage of a tax increment to be contributed by a taxing unit, increases the total estimated project costs, or designates additional property in the zone to be acquired by the municipality, the approval must be by ordinance adopted after a public hearing that satisfies the procedural requirements of Sections 311.003(c) and (d).

*Id.* § 311.011(e). Section 311.011 does not provide for the amendment of the financing plan.

As is apparent from section 311.011, chapter 311 generally contemplates that the reinvestment zone tax increment fund will finance "projects" — public works and improvements specified in the project and financing plans within the boundaries of the zone. However, section 311.010 authorizes limited expenditure of tax increment fund monies to finance activities outside the zone. Prior to June 18, 1999, when House Bill 2684 became effective, section 311.010 authorized the board of directors of a reinvestment zone to enter into agreements to implement the project plan. It provided that "[a]n agreement may dedicate revenue from the tax increment fund to pay the costs of replacement housing or areas of public assembly in or out of the zone." *Id.* § 311.010(b), *as added by*, Act of May 24, 1989, 71st Leg., R.S., ch. 1137, § 22, sec. 311.010, 1989 Tex. Gen. Laws 4683, 4690. As of June 18, 1999, section 311.010(b) authorizes the board of directors *or the city* to enter into agreements to implement the project plan: "An agreement may during the term of the agreement dedicate, pledge, or otherwise provide for the use of revenue in the tax increment fund to pay any project costs that benefit the reinvestment zone . . . . An agreement may dedicate revenue from the tax increment fund to pay the costs of providing affordable housing or areas of public assembly in or out of the zone." TEX. TAX CODE § 311.010(b), *as amended by*, H.B. 2684, Act of May 29, 1999, 76th Leg., R.S., ch. 983, § 3, sec. 311.010, 1999 Tex. Sess. Law Serv. 3763, 3764. The 1999 amendments, which were not effective during the lifetime of the City of El Paso reinvestment zone, do not apply.

Your questions involve use of a tax increment fund to complete projects after termination of the reinvestment zone. Taxing units participating in a reinvestment zone deposit increased tax revenues over and above the tax increment base into the tax increment fund. *See* TEX. TAX CODE ANN. § 311.013 (Vernon 1992). Expenditures from a tax increment fund are governed by section

311.014(b), which provides that money may be disbursed from the fund only to satisfy claims of holders of tax increment financing bonds issued for the zone, to pay project costs for the zone, "or to make payments pursuant to an agreement made under Section 311.010(b) dedicating revenue from the tax increment fund." *Id.* § 311.014(b). Subsection (d) of section 311.014 provides that "[a]fter all project costs and all tax increment bonds or notes issued for a reinvestment zone have been paid, and subject to any agreement with the bondholders, any money remaining in the tax increment fund shall be paid to the municipality and other taxing units levying taxes on the property in the zone" on a pro rata basis. *Id.* § 311.014(d). Neither subsection (b) nor (d) expressly provides for expenditure of monies to complete projects after termination of a reinvestment zone.

Nor does the provision governing the termination of a reinvestment zone, section 311.017, expressly provide for expenditures from the tax increment fund to complete projects. It provides that a reinvestment zone terminates on the earlier of (i) the termination date designated in the ordinance creating the zone; (ii) an earlier termination date designated by an ordinance adopted subsequent to the ordinance creating the zone; or (iii) the date on which all project costs, tax increment bonds, and interest on those bonds have been paid in full. *See id.* § 311.017(a). In addition, it provides that a city may terminate a reinvestment zone prior to payment of the tax increment bonds in full if it takes certain actions. *See id.* § 311.017(b) ("The tax increment pledged to the payment of bonds and interest on the bonds may be discharged and the reinvestment zone may be terminated if the municipality . . . deposits [in escrow] an amount that . . . will be sufficient to pay the principal of, premium, if any, and interest on all bonds issued on behalf of the reinvestment zone."). It appears that the reinvestment zone's board of directors ceases to exist as of the zone's termination. *See id.* § 311.010(c) ("after termination of the zone [an agreement entered into by board regarding restricting use of property in zone] is treated as if it had been adopted by the governing body of the municipality").

We turn to your specific questions. First, you ask whether "a public improvement project approved for location within a [reinvestment zone may] during the existence of the [zone] be placed at a location outside the [zone's] geographic boundary following termination of such [zone]" and, second, whether "the costs of a project so situated outside a former [reinvestment zone's] boundary [may] be considered 'project costs' as that term is defined in [section 311.002(1) of the Tax Code]." Request Letter at 5.

Although chapter 311 is silent with respect to expenditure of tax increment fund monies after a zone's termination, we believe a city has authority to expend such monies for limited purposes. Under section 311.014(b), money may be disbursed from the tax increment fund to satisfy obligations authorized by chapter 311 — to pay the bondholders, project costs, and agreements under section 311.010(b) dedicating revenue from the tax increment fund. *See* TEX. TAX CODE ANN. § 311.014(b). We construe section 311.014(b) to authorize a city to use unexpended tax increment fund monies to pay for reinvestment-zone obligations undertaken during the lifetime of the reinvestment zone after its termination. We do not construe it, however, to authorize a city to

undertake new projects or agreements after termination of the zone because such actions are expressly precluded by chapter 311.

Under chapter 311, it is the reinvestment zone board of directors rather than the city that is charged with establishing the scope of the work to be done in the zone. *See id.* § 311.011 (board of directors adopts project and financing plans); *see also id.* § 311.010(b), *as added by*, Act of May 24, 1989, 71st Leg., R.S., ch. 1137, § 22, sec. 311.010, 1989 Tex. Gen. Laws 4683, 4690 (reinvestment zone board of directors enters into section 311.010(b) agreement). Section 311.011 charges the board of directors of a reinvestment zone to prepare a project plan and a finance plan listing, among other things, the kind, number, and location of all proposed public works or improvements "in the zone." TEX. TAX CODE ANN. § 311.011(a), (c)(2) (Vernon 1992). The plans must be approved by the city. *See id.* § 311.011(d). The board of directors may amend the project plan with the approval of the city. *See id.* § 311.011(e). Section 311.011 clearly contemplates that public works and improvements will be made *in* the zone. Additionally, the location of public works is clearly the province of the reinvestment zone's board of directors and is established and governed by the project and financing plans. The city has no authority to amend project or financing plans by changing the location of projects on its own initiative either before or after the termination of a reinvestment zone. Nor does chapter 311 authorize the taxing units participating in the zone to confer on the city by contract the power to amend project or financing plans or to otherwise undertake new projects or agreements on behalf of the zone after the zone's termination.

Furthermore, use of unexpended monies in the tax increment fund for new projects or agreements after the zone's termination would be contrary to the express language of subsection (d) of section 311.014 requiring that, after payment of authorized project costs and bonds and subject to any agreement with the bondholders, any money remaining in the tax increment fund will be returned to the taxing units participating in the zone on a pro rata basis. *See id.* § 311.014(d). Chapter 311 does not authorize the taxing units to agree to renounce the refunds to which they are entitled under section 311.014(d).

Accordingly, in answer to your first question, after the termination of a reinvestment zone, a city is not authorized to undertake or complete a public work or improvement in a manner inconsistent with the project and financing plans created by the reinvestment zone board and approved by the city prior to the termination of the zone. Because project and financing plans must provide for projects located inside the zone, unexpended monies in the tax increment fund may not be used to build projects located outside the zone after the zone's termination. In answer to your second question, project costs are costs of the public works and improvements in the zone listed in the project plan, *i.e.*, projects. *See id.* § 311.002(1) ("project costs" are expenditures made or obligations "incurred by the municipality establishing a reinvestment zone that are listed in the project plan as costs of public works or public improvements in the zone"). Costs of a project not provided in or not consistent with the project plan, such as an improvement made outside the zone, are not "project costs" within the meaning of section 311.002(1).

We note that as of 1998 when the reinvestment zone was terminated, section 311.010(b) authorized the board of directors of a reinvestment zone to agree to "dedicate revenue from the tax increment fund to pay the costs of replacing housing or areas of public assembly in or out of the zone." *Id.* § 311.010(b), *as added by*, Act of May 24, 1989, 71st Leg., R.S., ch. 1137, § 22, sec. 311.010, 1989 Tex. Gen. Laws 4683, 4690. This provision authorized the board of directors to pay the cost of replacing housing or areas of public assembly displaced by improvements in the zone, even if the replacement housing or areas of public assembly are constructed outside the zone. *See id.* If the board of directors did in fact enter into such an agreement, and if construction of the monument is a cost of replacing an area of public assembly, then we believe that the city may expend monies remaining in the tax increment fund for this purpose. The determination whether the board of directors actually entered into a section 311.010(b) agreement and whether construction of the monument is a cost of replacing an area of public assembly involves questions of fact and is beyond the purview of an attorney general opinion.[5]

In sum, after the termination of a reinvestment zone, a city is not authorized, as a general matter, to use unexpended money in the tax increment fund to build an improvement outside the reinvestment zone. The city may do so only if, prior to the zone's termination, the reinvestment zone board of directors agreed to dedicate revenue from the tax increment fund to replace areas of public assembly, and if construction of the improvement is a cost of replacing an area of public assembly under section 311.010(b) of the Tax Code, *as added by*, Act of May 24, 1989, 71st Leg., R.S., ch. 1137, § 22, sec. 311.010, 1989 Tex. Gen. Laws 4683, 4690. Any money remaining in the tax increment fund after the termination of the zone not needed to defease the bonds and pay other projects or agreements undertaken during the existence of the zone must be returned to the taxing units on a pro rata basis. *See* TEX. TAX CODE ANN. § 311.014(d) (Vernon 1992).

---

[5]*See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (investigation and resolution of fact questions cannot be done in opinion process); DM-383 (1996) at 2 (questions of fact are inappropriate for opinion process); DM-98 (1992) at 3 (questions of fact cannot be resolved in opinion process); H-56 (1973) at 3 (improper for Attorney General to pass judgment on matter that would be question for jury determination); M-187 (1968) at 3 (Attorney General cannot make factual findings).

## S U M M A R Y

Under chapter 311 of the Tax Code, a city is not authorized to undertake or complete a reinvestment zone project in a manner that is not consistent with the reinvestment zone board of directors' project and financing plans, which must provide for projects within the zone. Therefore, as a general matter, a city may not use unexpended tax increment fund money after termination of a reinvestment zone to build an improvement outside the zone. The city may do so only if, prior to the zone's termination, the reinvestment zone board of directors agreed to dedicate revenue from the tax increment fund to replace areas of public assembly, and if construction of the improvement is a cost of replacing an area of public assembly under section 311.010(b) of the Tax Code, *as added by*, Act of May 24, 1989, 71st Leg., R.S., ch. 1137, § 22, sec. 311.010, 1989 Tex. Gen. Laws 4683, 4690.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee