OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



December 8, 1999

The Honorable Kip Averitt
Chair, Committee on Financial Institutions
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

The Honorable Michael Fleming
Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002-1700

Opinion No. JC-0152

Re: Whether a municipality may designate an area as a reinvestment zone under chapter 311 of the Tax Code if the area is not "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b) of the Texas Constitution, and related questions (RQ-0081-JC)

Gentlemen:

You both ask about the authority of a municipality to designate a reinvestment zone under chapter 311 of the Tax Code, the Tax Increment Financing Act, TEX. GOV'T CODE ANN. ch. 311 (Vernon 1992 & Supp. 1999) ("chapter 311" or "Act"), and are particularly concerned about the criteria that a section 311.005(a)(5) reinvestment zone must satisfy. Unlike subsections (a)(1), (a)(2), and (a)(3) of section 311.005, subsection (a)(5) contains no criteria that a proposed reinvestment zone must satisfy. Because article VIII, section 1-g(b) of the Texas Constitution authorizes the legislature to enact general law to permit cities to undertake tax increment financing only in "unproductive, underdeveloped, or blighted" areas, a section 311.005(a)(5) reinvestment zone is not authorized by article VIII, section 1-g unless the zone is in an "unproductive, underdeveloped, or blighted" area. We conclude that a city must determine that a reinvestment zone proposed under section 311.005(a)(5) is in an area that is "unproductive, underdeveloped, or blighted" either according to the criteria set forth in subsection (a)(1), (a)(2), or (a)(3), which reflect legislative definitions of the constitutional language, or according to similar criteria consistent with the meaning of article VIII, section 1-g(b) developed by the city. The determination whether a particular area satisfies the criteria of one of these statutory provisions or is otherwise "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b) according to similar criteria is for the city to make in the first instance, in good faith, exercising reasonable discretion, subject to judicial review.

Representative Averitt also asks about the constitutionality of subsections (d) and (e) of section 403.302 of the Government Code. Section 403.302 defines the "taxable value" of school district property for purposes of funding equalization formulas. Subsections (d) and (e) exclude from the definition of "taxable value" the value of property located within certain chapter 311 reinvestment zones. We conclude that these provisions do not as a matter of law violate the

constitutional mandate that the legislature establish and maintain an "efficient system of public free schools." TEX. CONST. art. VII, § 1.

## I. Designation of Chapter 311 Reinvestment Zones

Before addressing your specific questions about the designation of tax increment financing reinvestment zones under section 311.005, we examine the purpose, history, and general requirements of the Act. "Tax increment financing is designed to aid cities and towns in financing public improvements in blighted or underdeveloped areas." *City of El Paso v. El Paso Community College Dist.*, 729 S.W.2d 296, 296 (Tex. 1986). Chapter 311 establishes a tax increment financing scheme in which

> the existing tax revenues of each "taxing unit" are frozen; the tax increment financing bonds are sold; the improvements are constructed; the "blighted area" is revitalized; property values soar and ad valorem tax revenues increase. The increased tax revenues over and above the tax increment base are then used to retire the tax increment financing obligations.

*El Paso Community College Dist. v. City of El Paso*, 698 S.W.2d 248, 250 (Tex. App.–Austin 1985, writ granted), *rev'd on other grounds*, 729 S.W.2d 296 (Tex. 1986).

The statutory predecessor to chapter 311, the Tax Increment Financing Act of 1981, was preceded by a similar provision, former article 1066d of the Revised Civil Statutes, the Tax Increment Financing Act of 1979. *See* discussion *infra* pp. 6-7. In Attorney General Opinion MW-337, this office concluded that the 1979 provision violated the requirement of article VIII, section 1 that "[t]axation shall be equal and uniform," TEX. CONST. art. VIII, § 1(a), by "causing an unequal distribution of the ad valorem tax burden." Tex. Att'y Gen. Op. No. MW-337 (1981) at 5 ("All other property would have 100% of its value taxed to meet the ordinary needs of the city, but district property would have only a part of its value taxed for that purpose, causing an unequal distribution of the ad valorem tax burden.") (citations omitted).

The Tax Increment Financing Act of 1981 was enacted to take effect upon the voters' approval of an amendment to article VIII of the Texas Constitution, section 1-g(b),[1] which provides that

> [t]he legislature by general law may authorize an incorporated city or town to issue bonds or notes to finance the development or redevelopment of an unproductive, underdeveloped, or blighted area within the city or town and to pledge for repayment of those bonds or notes increases in ad valorem tax revenues imposed on property in the area by the city or town and other political subdivisions.

---

[1]*See* Act of Aug. 9, 1981, 67th Leg., 1st C.S., ch. 4, § 4, 1981 Tex. Gen. Laws 45, 52 (Texas Tax Increment Financing Act of 1981 to take effect upon adoption of TEX. CONST. art. VIII, § 1-g).

TEX. CONST. art. VIII, § 1-g(b). The adoption of article VIII, section 1-g(b) ensured the constitutionality of the Tax Increment Financing Act of 1981, by providing an exception to the article VIII, section 1 "equal and uniform" requirement. *See City of El Paso*, 729 S.W.2d at 296-97 (noting that TEX. CONST. art. VIII, § 1-g was an enabling amendment to ensure the constitutionality of the Tax Increment Financing Act of 1981). The Tax Increment Financing Act of 1981 was repealed and recodified as chapter 311 of the Tax Code in 1987.[2]

Chapter 311 imposes numerous requirements that a city must follow before adopting an ordinance providing for a reinvestment zone. For example, a city must prepare a preliminary reinvestment zone financing plan and send a copy to each taxing unit that levies real property taxes in the proposed zone, provide the public notice and an opportunity to be heard, and supply each taxing unit with a description of the proposed reinvestment zone, a proposed development plan and an estimate of the general impact of the proposed zone on property values and tax revenues. *See* TEX. TAX CODE ANN. § 311.003(b)-(h) (Vernon 1992).

In addition, a city must make a number of determinations before designating an area as a reinvestment zone. Section 311.003(a) provides that the governing body of a municipality by ordinance may designate an area within the municipality as a reinvestment zone if the governing body determines that "development or redevelopment would not occur solely through private investment in the reasonably foreseeable future." *Id.* § 311.003(a). In addition, section 311.004 requires that the reinvestment zone ordinance include findings that the "improvements in the zone will significantly enhance the value of all the taxable real property in the zone and will be of general benefit to the municipality" and that "the area meets the requirements of Section 311.005." *Id.* § 311.004(a)(7)(A), (B).

Section 311.005(a) establishes criteria for tax increment finance zones by providing that to be designated as a reinvestment zone, an area must:

(1) substantially arrest or impair the sound growth of the municipality creating the zone, retard the provision of housing accommodations, or constitute an economic or social liability and be a menace to the public health, safety, morals, or welfare in its present condition and use because of the presence of:

(A) a substantial number of substandard, slum, deteriorated, or deteriorating structures;

(B) the predominance of defective or inadequate sidewalk or street layout;

---

[2]*See* Act of May 1, 1987, 70th Leg., R.S., ch. 191, §§ 1 (adding title 3 to Tax Code), 12 (repealing former article 1066e), 13 ("no substantive change is intended by this Act"), 1987 Tex. Gen. Laws 1410, 1466.

        (C)  faulty lot layout in relation to size, adequacy, accessibility, or usefulness;

        (D)  unsanitary or unsafe conditions;

        (E)  the deterioration of site or other improvements;

        (F)  tax or special assessment delinquency exceeding the fair value of the land;

        (G)  defective or unusual conditions of title; or

        (H)  conditions that endanger life or property by fire or other cause;

    (2) be predominantly open and, because of obsolete platting, deterioration of structures or site improvements, or other factors, substantially impair or arrest the sound growth of the municipality; or

    (3) be in a federally assisted new community[3] located in the municipality or in an area immediately adjacent to a federally assisted new community;

    (4) Deleted by Acts 1989, 71st Leg., ch. 1106, § 27; or

    (5) be an area described in a petition requesting that the area be designated as a reinvestment zone, if the petition is submitted to the governing body of the municipality by the owners of property constituting at least 50 percent of the appraised value of the property in the area according to the most recent certified appraisal roll for the county in which the area is located.

*Id.* § 311.005(a) (footnote added). Finally, section 311.006 imposes certain limitations on the authority of a municipality to designate or expand a reinvestment zone. *See id.* § 311.006(a)-(d); *see also id.* § 311.006(e) (subsection (a)(1) of section 311.006 does not apply to a reinvestment zone designated under section 311.005(a)(5)).

---

[3]In this section, "federally assisted new community" means a federally assisted area that has received or will receive assistance in the form of loan guarantees under title X of the National Housing Act, if a portion of the federally assisted area has received grants under section 107(a)(1) of the Housing and Community Development Act of 1974. *See* TEX. TAX CODE ANN. § 311.005(b) (Vernon 1992).

You both ask specifically about the criteria that an area must satisfy in order to be designated as a reinvestment zone. Subsections (a)(1), (a)(2), and (a)(3) of section 311.005 set forth three alternate sets of criteria that an area must satisfy in order to be designated as a reinvestment zone. *See supra* pp. 3-4. Subsection (a)(5), however, contains no such criteria but rather provides a procedure pursuant to which an area may be designated as a reinvestment zone:

> (5) be an area described in a petition requesting that the area be designated as a reinvestment zone, if the petition is submitted to the governing body of the municipality by the owners of property constituting at least 50 percent of the appraised value of the property in the area according to the most recent certified appraisal roll for the county in which the area is located.

*Id.* § 311.005(a)(5).

Mr. Fleming asks if a municipality may designate an area as a reinvestment zone under section 311.005(a)(5) if the area does not satisfy the criteria of subsection (a)(1), (a)(2), or (a)(3) of that section or is not "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g. Memoradum Brief from Honorable Michael P. Fleming, Harris County Attorney, to Honorable John Cornyn, Texas Attorney General, at 1 (June 28, 1999) (on file with Opinion Committee). Representative Averitt asks if a municipality may lawfully designate an area as a reinvestment zone under section 311.005 if the area is not in fact "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g. Letter from Honorable Kip Averitt, Chair, Committee on Financial Institutions, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General, at 1 (Sept. 9, 1999) (on file with Opinion Committee) [hereinafter "Rep. Averitt Request Letter"]. He also asks if the phrase "unproductive, underdeveloped, or blighted" in article VIII, section 1-g may "apply to a commercial area that already has a substantial appraised value, has experienced and continues to experience substantial continued commercial development, and that is not 'blighted,' within the meaning attributed to that term under relevant Texas statutes - simply because a municipality contemplates that greater future development would occur in that area if a tax increment reinvestment zone were created than if it were not created?" *Id.*

We begin with some basic principles. As we have discussed, the legislature enacted the statutory predecessor to chapter 311 in 1981 to implement article VIII, section 1-g(b). *See supra* pp. 2-3. Article VIII, section 1-g(b) creates an exception to the article VIII, section 1 "equal and uniform" requirement, affirmatively authorizing tax increment financing, but only in "unproductive, underdeveloped, or blighted" areas. *See id.* When the constitution grants a power, and where the manner of exercising that power is prescribed, it is implied that the prescribed manner excludes all others. *See Walker v. Baker*, 196 S.W.2d 324, 327-28 (Tex. 1946). Thus, tax increment financing in an area that is not "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b) is not authorized by the constitution, *see id.*, and, moreover, would violate article VIII, section 1, *see* Tex. Att'y Gen. Op. No. MW-337 (1981) at 5.

Section 311.005(a)(5) appears to authorize a city to designate a reinvestment zone merely upon the request of the area's property owners. On its face, it does not require that the area be unproductive, underdeveloped, or blighted or require the city to make any findings regarding the area. Unless the area is in fact unproductive, underdeveloped, or blighted within the meaning of article VIII, section 1-g(b), however, such a designation would run afoul of article VIII, section 1. We must presume that the legislature intended section 311.005(a)(5) to comply with the constitution. *See* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1998) ("In enacting a statute, it is presumed that [] compliance with the constitutions of this state and the United States is intended."). Therefore, we construe section 311.005(a)(5) to permit the designation of only those areas that the city determines are "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b).

By what criteria is a city to judge whether an area subject to a section 311.005(a)(5) property owners' petition is in fact "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b)? When interpreting our state constitution, we rely on its literal text, *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 394 (Tex. 1989), and give effect to its plain language, *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995); *see also Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908 (Tex. 1972) ("The language of the Constitution must be presumed to have been carefully selected, and the words used are to [be] interpreted as the people generally understood them."); *Cramer v. Sheppard*, 167 S.W.2d 147 (Tex. 1942) ("the language [of the constitution] must be presumed to have been carefully selected, and the words used are to be interpreted as the people generally understood them"). We also look to the intent of the legislative framers and the people. *City of El Paso*, 729 S.W.2d at 298 ("In construing a constitutional amendment, we look to the intent of the framers and the voters who adopted the amendment."); *see generally Republican Party of Texas v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997) (court construing constitutional provision may consider, in addition to literal text, "the purpose of the constitutional provision, the historical context in which it was written, the collective intent, if it can be ascertained, of the framers and the people who adopted it, [] prior judicial decisions, the interpretations of analogous constitutional provisions by other jurisdictions, and constitutional theory"). Legislative definitions are often a useful aid in determining the meaning of constitutional terms. *See Aerospace Optimist Club v. Texas Alcoholic Beverage Comm'n*, 886 S.W.2d 556, 560 (Tex. App.–Austin 1994, no writ) ("The legislature's practical interpretation of a constitutional term can be a valuable aid in determining the meaning and intention of that term in cases of doubt. . . . Legislative construction can be of substantial value in constitutional interpretation.") (citing *Great S. Life Ins. Co. v. City of Austin*, 243 S.W. 778, 782 (Tex. 1922), and *American Indem. Co. v. City of Austin*, 246 S.W. 1019, 1023 (Tex. 1922)).

The Sixty-seventh Legislature proposed article VIII, section 1-g in Senate Joint Resolution 8. *See* Tex. S.J. Res. 8, 67th Leg., 1st C.S., 1981 Tex. Gen. Laws 295. A Texas Legislative Council analysis of the proposed constitutional amendment indicates that the constitutional amendment was intended to authorize tax increment financing in "economically distressed" areas.[4] We are not aware

---

[4]*See Analyses of Proposed Constitutional Amendments Appearing on November 3, 1981, Ballot*, Tex. Leg. Council, Information Report No. 81-3 (Sept. 1981) [hereinafter "Legislative Council Analysis"] (article VIII, section
(continued...)

of any other legislative history characterizing an unproductive, underdeveloped, or blighted area.[5] However, the legislative and Texas Legislative Council analyses of Senate Joint Resolution 8 link the proposed constitutional amendment to two statutes — former article 1066d, the Tax Increment Financing Act of 1979, *see* Act of May 28, 1979, 66th Leg., R.S., ch. 695, 1979 Tex. Gen. Laws 1661, the constitutionality of which had been questioned in Attorney General Opinion MW-337, and former article 1066e, the Tax Increment Financing Act of 1981, article VIII, section 1-g(b)'s implementing legislation and the statutory predecessor to chapter 311 of the Tax Code.[6] The criteria for reinvestment zones set forth in subsections (a)(1) and (a)(2) of section 311.005 date from the 1981 implementing legislation,[7] and are almost identical to former article 1066d's definition of the term "blighted area." Compare *id.* § 1 (adopting former article 1066d, section 1(1) defining "blighted area") with TEX. TAX CODE ANN. § 311.005(a)(1), (2) (Vernon 1992) (codification of provisions originally enacted in former article 1066e). In addition, subsection (a)(3) of section 311.005, which extends the definition to areas eligible for certain federal assistance, dates from the 1981 implementing legislation.[8] Given that these subsections date from the 1981 implementing legislation, we believe that subsections (a)(1), (a)(2), and (a)(3) of section 311.005 are a valuable aid in construing the constitutional language and in divining the framers' and voters' intent. *Cf. City of El Paso*, 729 S.W.2d at 298 (construing the term "political subdivisions" in article VIII, section 1-g(b) consistent with 1981 implementing legislation to include school districts because "the reason for proposing the amendment was to provide a constitutional basis for the Act").

Accordingly, we conclude that under article VIII, section 1-g(b) an "unproductive, underdeveloped, or blighted area" is an area that is economically distressed, such as an area meeting the criteria of section 311.005, subsection (a)(1), (a)(2), or (a)(3). However, we do not believe that subsections (a)(1), (a)(2), and (a)(3) establish the only possible criteria for an "unproductive, underdeveloped, or blighted area." We believe that a city governing body may, pursuant to its authority under section 311.003 of the Tax Code to designate a reinvestment zone, determine whether an area identified by property owners under section 311.005(a)(5) is an "unproductive,

---

[4](...continued)
1-g(b) would authorize the legislature to permit cities "to finance redevelopment of certain *economically distressed areas* by issuing bonds or notes payable from increases in property tax revenues on property in the areas designated for redevelopment. . . . Adoption of S. J. R. 8 would authorize the use of tax increment financing to encourage the redevelopment of property in *economically distressed areas*") (emphasis added).

[5]The legislative bill analyses do not define or elucidate the terms "unproductive," "underdeveloped," and "blighted." *See* SENATE FINANCE COMM., BILL ANALYSIS, Tex. C.S.S.J.R. 8, 67th Leg., 1st C.S. (1981); HOUSE COMM. ON CONSTITUTIONAL AMENDMENTS, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981).

[6]*See* SENATE FINANCE COMM., BILL ANALYSIS, Tex. C.S.S.J.R. 8, 67th Leg., 1st C.S. (1981); HOUSE COMM. ON CONSTITUTIONAL AMENDMENTS, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981); Legislative Council Analysis ("The amendment was proposed by the 67th Legislature . . . in response to the attorney general's opinion that the 1979 tax increment financing legislation was unconstitutional.")

[7]*See* Act of Aug. 9, 1981, 67th Leg., 1st C.S., ch. 1, § 1, 1981 Tex. Gen. Laws 45, 46-47 (adopting former article 1066e, section 3(b)(1), (2)).

[8]*See id.* (adopting former article 1066e, section 3(b)(3)).

underdeveloped, or blighted area" within article VIII, section 1-g(b) of the Texas Constitution. The city may make this determination either according to the criteria set forth in subsection (a)(1), (a)(2), or (a)(3), which reflect legislative definitions of the constitutional language, or according to similar criteria consistent with article VIII, section 1-g(b) developed by the city. *See generally* TEX. TAX CODE § 311.008 (Vernon 1992) (municipality may exercise any power necessary and convenient to carry out this chapter); *see also* Tex. Att'y Gen. Op. No. JC-0141 (1999) (concluding that city generally not authorized to expend funds of terminated reinvestment zone to construct improvement outside of zone because such use contrary to express provisions of chapter 311). An area subject to a section 311.005(a)(5) petition need not satisfy the specific criteria of either subsection (a)(1), (a)(2), or (a)(3) if it satisfies the city's own, similar criteria. Finally, any decision that a section 311.005(a)(5) area satisfies such criteria must be made in good faith and in the exercise of reasonable discretion, subject to judicial review.

Thus, in answer to your first two questions, a city may not designate an area as a reinvestment zone, including an area subject to a petition under section 311.005(a)(5), unless the area is "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b). An area that satisfies the criteria of section 311.005(a)(1), (a)(2), or (a)(3) comports with this constitutional requirement. A city must determine that an area subject to a petition under section 311.005(a)(5) is "unproductive, underdeveloped, or blighted" either according to the criteria set forth in subsection (a)(1), (a)(2), or (a)(3) or according to its own, similar criteria. In answer to the third question, an area may not be designated as a reinvestment zone "simply because [the] municipality contemplates that greater future development would occur in that area if a tax increment zone were created than if it were not created." *See* Rep. Averitt Request Letter, at 1. The city must determine that the area meets the criteria of subsection (a)(1), (a)(2), or (a)(3) or that it is "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b) according to similar criteria developed by the city.

Finally, we caution that the determination whether a particular area satisfies the criteria of either subsection (a)(1), (a)(2), or (a)(3) or is "unproductive, underdeveloped, or blighted" according to similar criteria is for the city to make in the first instance, in good faith, exercising reasonable discretion, subject to judicial review. In addition, the city must also determine that any proposed designation also satisfies all other applicable chapter 311 requirements. *See, e.g.,* TEX. TAX CODE ANN. §§ 311.003(a), .004, .006 (Vernon 1992). Such determinations involve questions of fact. This office is unable to make findings of fact in the opinion process, *see* note 15 *infra*, and we express no opinion regarding whether a particular area may be designated as a chapter 311 reinvestment zone.

## II. **Chapter 311 Reinvestment Zones and School Funding**

Finally, Representative Averitt asks about the constitutionality of subsections (d) and (e) of section 403.302 of the Government Code. Before addressing his question, we begin with a brief review of the history and purpose of section 403.302. Section 403.302 defines the "taxable value" of school district property for purposes of funding equalization formulas. Responding to a series of lawsuits challenging the state's school-finance system, *see generally Edgewood Indep. Sch. Dist. v.*

*Meno,* 917 S.W.2d 717, 726-28 (Tex. 1995) (describing history of *Edgewood* litigation), the legislature enacted Senate Bill 7 in 1993, which, among other things, provided property-poor districts with basic state support and imposed a cap on a school district's taxable property value at a level of $280,000 per student.[9] Under this new school-finance scheme, a property-rich school district exceeding the "wealth per student" cap must elect one or more of several options to reduce the value of its taxable property within the cap. *See* TEX. EDUC. CODE ANN. § 41.002 (Vernon 1996 & Supp. 1999) (wealth per student cap); § 41.003 (Vernon 1996) (options to achieve equalized wealth). Section 403.302 charges the Comptroller with determining the "total taxable value" of all property in each school district on an annual basis, a figure which is then used to calculate each district's "wealth per student." *See id.* § 41.001 (Vernon 1996) (defining "wealth per student" as the taxable value of property determined by the Comptroller divided by the number of students in weighted average daily attendance). Subsections (d) and (e) of section 403.302 exclude from the definition of "taxable value" the total dollar amount of any captured appraised value of property located in certain chapter 311 tax increment zones. *See* TEX. TAX CODE ANN. § 311.012(b) (Vernon 1992) ("The captured appraised value of real property taxable by a taxing unit for a year is the total appraised value of all real property taxable by the unit and located in a reinvestment zone for that year less the tax increment base of the unit.").

As originally enacted in the Government Code in 1995, section 403.302(d) defined the term "taxable value" to mean market value less "the total dollar amount of any captured appraised value of property that is located in a reinvestment zone and that is eligible for tax increment financing under chapter 311, Tax Code."[10] The effect of this provision was to exclude from "taxable value" an amount representing the increase in the value of property located in any tax increment financing reinvestment zone above the property's value at the time the zone was created. *See id.*

The legislature subsequently narrowed this exception in both the 1997 and 1999 legislative sessions. In Senate Bill 1368, adopted as part of the state's continuing statutory revision program under chapter 323 of the Government Code,[11] the Seventy-sixth Legislature reconciled amendments to section 403.302(d) made by the Seventh-fifth Legislature and reenacted a version of section 403.302(d) that limited the exception from taxable value to property located in reinvestment zones

---

[9]Act of May 28, 1993, 73d Leg., R.S., ch. 347, 1993 Tex. Gen. Laws 1479.

[10]*See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 26, 1995 Tex. Gen. Laws 2207, 2482-84.

[11]Tex. S.B. 1368, Act of Apr. 23, 1999, 76th Leg., R.S., ch. 62, § 1.01, 1999 Tex. Sess. Law Serv. 127.

approved before September 1, 1999.[12] House Bill 2684 of the Seventy-sixth Legislature amended subsection (d)(3) of section 403.302 to read as follows:

> (d) For the purposes of this section, "taxable value" means the market value of all taxable property less:
>
> . . . .
>
> (3) subject to Subsection (e), the total dollar amount of any captured appraised value of property that:
>
> (A) is within a reinvestment zone created on or before May 31, 1999, or is proposed to be included within the boundaries of a reinvestment zone as the boundaries of the zone and the proposed portion of tax increment paid into the tax increment fund by a school district are described in a written notification provided by the municipality or the board of directors of the zone to the governing bodies of the other taxing units in the manner provided by Section 311.003(e), Tax Code, before May 31, 1999, and within the boundaries of the zone as those boundaries existed on September 1, 1999, including subsequent improvements to the property regardless of when made;
>
> (B) generates taxes paid into a tax increment fund created under Chapter 311, Tax Code, under a reinvestment zone financing plan approved under Section 311.011(d), Tax Code, on or before September 1, 1999; and
>
> (C) is eligible for tax increment financing under Chapter 311, Tax Code.

---

[12]Senate Bill 1368 reenacted section 403.302 to read in pertinent part as follows:

> (d) For the purposes of this section, "taxable value" means the market value of all taxable property less:
>
> . . . .
>
> (3) the total dollar amount of any captured appraised value of property that is located in a reinvestment zone on August 31, 1999, generates a tax increment paid into a tax increment fund, and is eligible for tax increment financing under Chapter 311, Tax Code, under a reinvestment zone financing plan approved under Section 311.011(d), Tax Code, before September 1, 1999.

Tex. S.B. 1368, Act of Apr. 23, 1999, 76th Leg., R.S., ch. 62, § 8.04, 1999 Tex. Sess. Law Serv. 127, 307.

H.B. 2684, Act of May 29, 1999, 76th Leg., R.S., ch. 983, § 9, 1999 Tex. Sess. Law Serv. 3763, 3767. In addition, House Bill 2684 amended subsection (e) of section 403.302 to read as follows:

> (e) The total dollar amount deducted in each year as required by Subsection (d)(3) in a reinvestment zone created after January 1, 1999, may not exceed the captured appraised value estimated for that year as required by Section 311.011(c)(8), Tax Code, in the reinvestment zone financing plan approved under Section 311.011(d), Tax Code, before September 1, 1999. The number of years for which the total dollar amount may be deducted under Subsection (d)(3) shall for any zone, including those created on or before January 1, 1999, be limited to the duration of the zone as specified as required by Section 311.011(c)(9), Tax Code, in the reinvestment zone financing plan approved under Section 311.011(d), Tax Code, before September 1, 1999. The total dollar amount deducted under Subsection (d)(3) for any zone, including those created on or before January 1, 1999, may not be increased by any reinvestment zone financing plan amendments that occur after August 31, 1999. The total dollar amount deducted under Subsection (d)(3) for any zone, including those created on or before January 1, 1999, may not be increased by a change made after August 31, 1999, in the portion of the tax increment retained by the school district.

*Id.* § 9, at 3768. The amendments to section 403.302 made by House Bill 2684 prevail over the non-substantive recodification of section 403.302 adopted by Senate Bill 1368. *See* Act of Apr. 23, 1999, 76th Leg., R.S., ch. 62, § 1.02(b), 1999 Tex. Sess. Law Serv. 127 (if any provision of Senate Bill 1368 conflicts with a statute enacted by the Seventy-sixth Legislature, Regular Session, the statute controls). The provisions adopted by House Bill 2684 limit and phase out the exception from "taxable value" for value of property located in chapter 311 reinvestment zones.

Representative Averitt asks whether subsections (d) and (e) of section 403.302 violate article VII, section 1 of the Texas Constitution, which requires the legislature to establish and maintain "an efficient system of public free schools." TEX. CONST. art. VII, § 1. Representative Averitt is concerned about the effect of subsections (d) and (e) on funding equalization formulas, observing that these subsections "provide that the taxable value of property within a school district for purposes of calculating benefits due the district under existing state school-finance formulas shall not include the appraised value of property within a reinvestment zone existing on September 1, 1999, apparently even if a school district retains financial benefits from incremental taxes generated within the zone." Rep. Averitt Request Letter, at 1-2. Under section 403.302(d) and (e), a property-rich school district may lower the total taxable value of its property by participating in a tax increment zone (and contributing taxes to the tax increment fund), thus reducing both its wealth per student and the extent to which it must participate in funding equalization, even though the school district may ultimately benefit from the increased property values as a result of improvements financed by the

tax increment fund. For other school districts, participation in a tax increment zone may increase their entitlement to state support.

Article VII, section 1 of the Texas Constitution recognizes that "[a] general diffusion of knowledge [is] essential to the preservation of the liberties and rights of the people" and requires the legislature "to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." Tex. Const. art. VII, § 1. According to the Texas Supreme Court, "efficiency" in article VII, section 1 must "be measured against both qualitative and financial standards." *Edgewood*, 917 S.W.2d at 730. "[A]n efficient system does not require equality of access to revenue at all levels." *Id.* at 729. Rather, it requires that "districts must have substantially equal access to funding up to the legislatively defined level that achieves the constitutional mandate of a general diffusion of knowledge." *Id.* at 730. The court concluded that the legislature sufficiently fulfilled the mandate of qualitative and financial efficiency in 1993 with the enactment of Senate Bill 7, which made significant educational reforms, guaranteed sufficient funding for all school districts to provide a basic program of education that meets accreditation standards, permitted school districts to supplement the basic program, and imposed a cap on a school district's taxable property value at a level of $280,000 per student. *See id.* at 727-37.

The school-finance reforms of 1993 carried over a provision much like section 403.302 of the Government Code. Senate Bill 7 amended section 11.86 of the Education Code, which directed the Comptroller to exclude from the total value of all taxable property in each school district "the total dollar amount of any captured appraised value of property that is located in a reinvestment zone and that is eligible for tax increment financing under the Tax Increment Financing Act (Chapter 311, Tax Code)."[13] The section 11.86 exclusion for chapter 311 reinvestment zone property was first enacted in 1981.[14] Because the school-finance system reviewed and approved by the Texas Supreme Court in 1995 included a provision quite similar to subsections (d) and (e) of section 403.302 of the Government Code, we cannot conclude as a matter of law that these provisions run afoul of article VII, section 1.

Furthermore, as is clear from *Edgewood,* any analysis of whether features of the state school finance system comply with article VII, section 1 standards must be made on a statewide basis and will be highly fact-intensive in nature. *See, e.g., Edgewood,* 917 S.W.2d at 731-34 (discussing nature and constitutional significance of certain disparities in funding). The Attorney General cannot make findings of fact in the opinion process,[15] and the determination whether the exclusion of the

---

[13]Act of May 27, 1993, 73d Leg., R.S., ch. 347, § 4.01, 1993 Tex. Gen. Laws 1479, 1521 (amending section 11.86 of the Education Code).

[14]*See* Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 5, § 8, 1981 Tex. Gen. Laws 53, 56.

[15]*See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (investigation and resolution of fact questions cannot be done in opinion process); DM-383 (1996) at 2 (questions of fact are inappropriate for opinion process); DM-98 (1992) at 3 (questions of fact cannot be resolved in opinion process); H-56 (1973) at 3 (improper for Attorney General to pass judgment on matter that would be question for jury determination); M-187 (1968) at 3 (Attorney General cannot make factual findings).

value of the captured appraised value of property in chapter 311 reinvestment zones from "taxable value" on a statewide basis violates article VII, section 1 as a matter of fact is therefore a question beyond the purview of an attorney general opinion. In this regard, however, we note that since the Texas Supreme Court approved the school-financing system in 1995, the legislature has acted to limit and phase out the exclusion from taxable value for property located within a tax increment zone. *See* discussion *supra* pp. 9-11. Thus, we doubt that the exclusion of the value of the captured appraised value of property in chapter 311 reinvestment zones from "taxable value" on a statewide basis from 1995 to the present has in fact significantly affected the efficiency of our school-finance system. The ultimate resolution of that question, however, is beyond our purview.

## S U M M A R Y

A city may not designate an area as a tax increment financing reinvestment zone, including an area subject to a petition under section 311.005(a)(5) of the Tax Code, unless the area is "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b) of the Texas Constitution. An area that satisfies the criteria of section 311.005(a)(1), (a)(2), or (a)(3) comports with this constitutional requirement. A city must determine that an area subject to a petition under section 311.005(a)(5) is "unproductive, underdeveloped, or blighted" either according to the criteria set forth in subsection (a)(1), (a)(2), or (a)(3) of section 311.005 or according to its own, similar criteria. This determination is for the city to make in the first instance, in good faith, exercising reasonable discretion, subject to judicial review.

Section 403.302 of the Government Code defines the "taxable value" of school district property for purposes of school-finance funding equalization formulas. Subsections (d) and (e) of section 403.302, which exclude from the definition of "taxable value" the value of property located within certain chapter 311 reinvestment zones, do not as a matter of law violate the constitutional mandate that the legislature establish and maintain an "efficient system of public free schools," TEX. CONST. art. VII, § 1.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee