**EL PASO COUNTY COMMUNITY COLLEGE DISTRICT, et al., Appellants,**

v.

**CITY OF EL PASO, Texas, Appellee.**

**No. 14309.**

Court of Appeals of Texas, Austin.

Oct. 9, 1985.

Rehearing Denied Nov. 6, 1985.

Michael C. Crowley, Edward W. Dunbar, Christie, Berry & Dunbar, El Paso, for El Paso County Community College Dist.

Sam Sparks, S. Anthony Safi, Grambling & Mounce, El Paso, for El Paso ISD.

John F. Boyle, Jr., Diamond, Rash, Leslie & Smith, El Paso, for City of El Paso, Tex.

Jim Mattox, Atty. Gen., Susan Lee Voss, Asst. Atty. Gen., Austin, for Atty. Gen. of Texas.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

CARROLL, Justice.

The City of El Paso ("City") obtained a declaratory judgment from the district court of Travis County concerning The City's authority to issue tax increment bonds pursuant to the Tax Increment Financing Act of 1981, Tex.Rev.Civ.Stat.Ann. art. 1066e (Supp.1985). We will reverse the judgment of the trial court.

### TAX INCREMENT FINANCING

*1. In General.* Tax increment financing is a vehicle whereby incorporated towns or cities can raise current funds to finance public improvements. The town or city will first designate a specific "reinvestment zone," determine that the area is "unproductive, underdeveloped, or blighted," determine the "tax increment base" (the total value of all taxable real property) of the reinvestment zone as of a specific time, and thereafter pledge future ad valorem tax revenues in excess of the "tax incre-

ment" or existing tax base as security. for repayment of "tax increment bonds or notes" issued to finance public improvements within the zone. Such improvements may include, but are not limited to, construction or improvement of parks, parking lots, streets *or educational facilities.*

Under this scheme, the existing tax revenues of each "taxing unit" are frozen; the tax increment financing bonds are sold; the improvements are constructed; the "blighted area" is revitalized; property values soar and ad valorem tax revenues increase. The increased tax revenues over and above the tax increment base rate are then used to retire the tax increment financing obligations, and thereafter the additional tax revenues flow to the various political subdivisions involved for their then current revenue purposes.

*2. The Constitutional and Statutory Basis.* The 67th Legislature passed a proposed constitutional amendment entitled "development or redevelopment of property; ad valorem tax relief and issuance of bonds and notes" which was adopted by the voters in November of 1981. Tex.Const. Ann. art. VIII, § 1–g (Supp.1985). Section 1–g(a), dealing with exemptions or other relief from ad valorem taxes on property located in a reinvestment zone to encourage development or redevelopment of property, is not involved in this appeal. Section 1–g(b) provides that the Legislature may authorize an incorporated city or town " . . . to issue bonds or notes to finance the development or redevelopment of an unproductive . . . blighted area within the city or town and to pledge for repayment of those bonds . . . increases in ad valorem tax revenues imposed on property in the area by the city or town and *other political subdivisions."* (emphasis added)

In anticipation of the adoption of this constitutional amendment, the Legislature passed the Texas Tax Increment Financing Act of 1981. Tex.Rev.Civ.Stat.Ann. art. 1066e (Supp.1985). Article 1066e sets forth specific conditions and requirements which must be followed before a reinvestment

zone will qualify for the issuance of tax increment financing or notes.

## THE EL PASO PLAN

Pursuant to the 1981 Act, the City passed Ordinance No. 7094 designating the central business district of El Paso as its tax incremental district number one. The City's project plan called for improvements to parking facilities and rerouting of certain existing streets. It is undisputed that the designated area has no educational facilities that will be enhanced by the planned improvements, and that under the project plan, no funds will be expended for any educational purpose.

*All* government entities within the proposed district were included in the plan, including the El Paso Independent School District and the El Paso County Community College District. The School District and the Community College District strenuously resisted inclusion in the reinvestment district, and threatened litigation against the City to determine the propriety of their forced participation in the reinvestment zone plan.

## ACTION IN THE DISTRICT COURT

The City fulfilled all jurisdictional requirements of the Tax Increment Financing Act. The City then filed suit for declaratory judgment in the District court of Travis County against El Paso County, El Paso Independent School District, El Paso County Community College District, El Paso County Hospital District, and others concerning the validity and legality of the El Paso reinvestment zone. The district court rendered judgment declaring constitutional the 1981 Tax Increment Financing Act and approving the City's tax incremental district. This appeal followed.

## CONTENTIONS ON APPEAL

The School District urges ten points of error on appeal. Some of these points deal with purely procedural matters, while others challenge the designation of the central business district of the City of El Paso

(admittedly the richest section of the City) as a "blighted" area. However, our holding dealing with the constitutionality of the underlying Tax Increment Financing Act, as applied to public school districts, makes a resolution of these subsidiary points of error unnecessary.

Under points of error one, two and three, the School District argues that the ordinance establishing the reinvestment zone is unconstitutional because it allows the City to pledge and use ad valorem tax revenues of the School District for noneducational purposes, without the consent and against the express direction of the School District's board of trustees. Additionally, the School District argues that, for the purposes of tax increment financing, an independent school district is not a "political subdivision" within the meaning of Tex. Const.Ann. art. VIII, § 1–g(b), *supra*. We agree.

### DISCUSSION AND HOLDINGS

*1. Public Education in Texas.* Free public schooling was and is an important part of Texas. Historically, Texas has emphasized the need for, and the importance of, its public school system. As early as 1839, the Republic passed a law providing that three leagues of public domain (13,284 acres) should be surveyed and set apart in each county for a primary school system. 2 Gammel's Laws of Texas, pp. 320–322. This sort of emphasis on public education has continued into modern times.

■ Texas Const.Ann. art. Vii, § 3 (1955) provides that the Legislature may authorize a school district to levy and collect an ad valorem tax for the "maintenance of public free schools" and for "the erection and equipment of school buildings therein." Texas Educ.Code Ann. §§ 20.01 and 20.02 (1972) provide that a school district may levy and pledge ad valorem taxes to pay for bonds issued "for the construction and equipment of school buildings in the district and for the necessary sites therefor" and may levy ad valorem taxes for the "maintenance of public free schools in the district." Section 20.48 (1972) provides

that local school funds from district ad valorem taxes "shall not be expended except" for "purposes necessary in the conduct of the public schools." Public free school funds may be expended only for purposes strictly necessary in the conduct of public schools and are to be determined by the school district's board of trustees. *Palmer v. Dist. Trustee*, 289 S.W.2d 344 (Tex.Civ.App.1956, writ ref'd n.r.e.).

The Supreme Court, in reviewing the history of the subject and the statutory and constitutional provisions relating thereto, has held that the property and funds of the public schools of Texas are to be used for the benefit of the school children of the community or district in which the properties exist and where the funds have been allocated. The Court has further determined that since these funds and properties are so clearly impressed with a trust benefiting local public schools, such funds and properties are within the protective claims of the state and federal constitutions, and the Legislature is without power to devote the funds to any purpose other than education. *Texas Antiquities Committee v. Dallas County Community College District*, 554 S.W.2d 924 (Tex.1977); *Love v. City of Dallas*, 120 Tex. 351, 40 S.W.2d 20 (1931).

*2. Apparent Conflict.* As shown, there is an apparent conflict between the constitutional and statutory provisions dealing with tax increment financing and the constitutional and statutory provisions dealing with public school financing. The City takes the position that under the tax increment financing scheme it has the absolute right and authority to take public school revenues and apply these revenues to non-educational purposes. The City argues in effect that the funds in question (that is, future increases in ad valorem tax revenues due to the revitalization of the "blighted area") do not yet belong to the school districts and are therefore subject to control by the City. To support such a position, this Court would have to hold that the 1981 tax increment financing amendment to the constitution expressly or impli-

edly repealed the constitutional public school fund protections that go back to the very beginning of the State's history. This we are unwilling to do.

*3. Avoidance of Conflict.* Article VIII, § 1–g(b) specifically authorizes the City to "... pledge for repayment of those bonds or notes increases in ad valorem tax revenues imposed on property in the area by the city or town and *other political subdivisions."* On the other hand, art. VII, § 3, authorizes "... an additional ad valorem tax to be levied and collected within all school districts ... for the further maintenance of public free schools, and for the erection and equipment of school buildings therein ..."

■ A constitutional amendment must be construed with a view to understanding and following the intention of the voters. *Farrar v. Board of Trustees,* 150 Tex. 572, 243 S.W.2d 688 (1951); *Cox v. Robison,* 150 S.W. 1149 (Tex.1912). As noted above, the title of the constitutional amendment in question reads "development or redevelopment of property; ad valorem tax relief and issuance of bonds and notes." While the term "political subdivisions" is used within the body of the amendment, nowhere is the term "school district" used, and a fair reading of the amendment as a whole gives no basis for a voter to conclude that the adoption of the amendment would allow the use of school funds for noneducational purposes.

■ The Constitution must be read as a whole, and *all amendments thereto must be considered as if every part had been adopted at the same time and as one instrument,* and effect must be given to each part of each clause, as explained and qualified by every other part. *Jones v. Williams,* 121 Tex. 94, 45 S.W.2d 130 (1931). Different sections, amendments, or provisions of the Constitution which relate to the same subject must be construed together and considered in light of each other. *Purcell v. Lindsey,* 158 Tex. 541, 314 S.W.2d 283 (1958). Further, we are required to avoid an interpretation of the Constitution which would produce a conflict between two particular provisions, if under any reasonable construction both may be made to stand together. If reasonable, our construction should *reconcile* apparent repugnancies and give effect to every part. *Hansen v. Jordan,* 145 Tex. 320, 198 S.W.2d 262 (1946).

■ The apparent conflict between the relevant constitutional and statutory provisions can be avoided by holding that an independent school district is not a "political subdivision" as that term is used in art. VIII, § 1–g(b), and we so hold. This is not to say that an independent school district may not be a political subdivision in some other context, or under some other constitutional or statutory provisions. However, within the terms of tax increment financing as authorized by art. VIII, § 1–g, and as enacted under the Tax Increment Financing Act, an independent school district is not a political subdivision, and tax revenues belonging to such an independent school district cannot be pledged for the repayment of tax increment financing obligations. The School District's points of error one, two, and three are sustained.

El Paso County Community College District has also appealed from the judgment of the trial court, and under its point of error number four contends that the City cannot pledge and use ad valorem tax revenues belonging to the Community College for non-educational purposes. In support of this argument the Community College adopted the arguments advanced on behalf of the School District in its corresponding points of error. In sustaining the School District's points of error, we are likewise sustaining the Community College's point of error number four.

The judgment of the trial court is hereby reversed and we render judgment that the City of El Paso's Ordinance Number 7548 is unconstitutional, illegal, invalid and unenforceable as to the School District and the Community College, and order the City of El Paso to return to the El Paso Independent School District and to the El Paso County Community College District all of

their tax revenues taken by the City acting under said ordinance.