The CITY OF EL PASO, Texas et al., Petitioners,

v.

EL PASO COMMUNITY COLLEGE DISTRICT et al., Respondents.

No. C–4752.

Supreme Court of Texas.

July 16, 1986.

Rehearing Denied May 13, 1987.

Jim Mattox, Atty. Gen. and Asst. Deborah Herzberg, Austin, Ray Hutchison, Hutchison, Price, Boyle & Brooks, Dallas, Tom Diamond, Diamond, Rash, Leslie & Smith, El Paso, for petitioners.

S. Anthony Safi, Grambling & Mounce and Sam Sparks, Michael C. Crowley, Edward W. Dunbar, Christie, Berry & Dunbar, El Paso, for respondents.

CAMPBELL, Justice.

The City of El Paso and the Attorney General of Texas seek declaratory judgment that the Tax Increment Financing Act, article 1066e, which allows the creation of reinvestment zones, is constitutional. The trial court held the Act constitutional. The court of appeals reversed the trial court's judgment and held the Act unconstitutional as applied to the El Paso Independent School District and Community College District. 698 S.W.2d 248. We reverse the judgment of the court of appeals.

The Tax Increment Financing Act was passed in 1981. Tax increment financing is designed to aid cities and towns in financing public improvements in blighted or underdeveloped areas. Under Article 1066e, a municipality must designate a specific area which, in its opinion, meets the definitional requirements of a "reinvestment zone." Tex.Rev.Civ.Stat.Ann. art. 1066e § 3(b) (Vernon Supp.1985). Any increase in ad valorem tax revenues from land within the zone is then committed to the purchase of property, improvement of approved property, or retirement of revenue bonds issued to provide funding for the approved projects.

The legislature recognized an enabling amendment would be necessary to ensure the Act's constitutionality. It proposed an amendment entitled, "Development or redevelopment of property; ad valorem tax relief and issuance of bonds and notes." Tex. Const.Ann. art. VIII, § 1–g. This amendment was adopted by the people of

Texas in 1981. Section 1–g(b) of the amendment provides that the legislature may authorize an incorporated city or town "... to issue bonds or notes to finance the development or redevelopment of an unproductive, underdeveloped or blighted area ... and to pledge for repayment of those bonds or notes increases in ad valorem tax revenues imposed on property in the area by the city or town and *other political subdivisions.*"

On December 30, 1980, the City of El Paso created a Tax Increment District in its central business district. After the passage of article 1066e the City confirmed the District as a Reinvestment Zone by an ordinance effective August 10, 1982. All government entities within the District are included in the reinvestment zone. The School Districts claim the Act is unconstitutional as applied to them. However, the trial court held the Act constitutional and the City's ordinance valid.

On appeal the School Districts contend the ordinance is unconstitutional because it allows the City to use the School Districts' ad valorem tax revenues for non-educational purposes and to seize the revenues without the consent of the School District's Board of Trustees, in violation of Tex. Const. Ann. art. VII, § 3.[1] The School Districts further argue that a school district and community college district are not subject to tax increment financing because they are not "political subdivisions" within the meaning of art. VIII, § 1–g(b) of the Texas Constitution.

The court of appeals held the ordinance unconstitutional because article VII of the Constitution allows the use of school funds only for the "maintenance of public free schools" and for "the erection and equipment of school buildings" in the school district. That court cited the Texas Education Code's prohibition against expending school funds for purposes other than those "necessary in the conduct of public schools", to be determined by the School District's Board of Trustees. *Palmer v. Dist. Trustee,* 289 S.W.2d 344 (Tex.Civ. App.–Texarkana 1956, writ ref'd, n.r.e.); Tex.Educ.Code Ann. § 20.48 (1972).

The court of appeals further held the school districts are not subject to the mandate of art. VIII because school districts are not "political subdivisions" as that term is used in the amendment. The school districts urged other points which the court of appeals did not address.

In this court, the City asserts that although article VII would prohibit expenditures of the school district's tax revenues for purposes other than maintenance of free public schools, article VIII modified this restriction by allowing use of school funds for the specific purposes of the Act. The City argues that article VIII should control over article VII because article VIII was passed later and is therefore the "latest expression of the will of the people, and any provisions of the constitution previously existing must, in case of conflict, yield to [the amended sections]." *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 152 (1942).

The school districts respond that this rule of construction of constitutional amendments should be applied only as a last resort, *Farrar v. Board of Trustees,* 150 Tex. 572, 243 S.W.2d 688 (1951) and only after "a determination that it is impossible to harmonize the provisions by any reasonable construction which will permit them to stand together." *Collingsworth County v. Allred,* 120 Tex. 473, 40 S.W.2d 13, 15 (1931). The school districts urge that instead of finding a conflict exists and applying the rule of construction that the later amendment prevails, we should try to harmonize articles VII and VIII by holding that article VIII does not encompass school districts in its use of the term "political subdivisions".

**1.** Article VII, § 3 provides, in pertinent part: ... the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts and for the management and control of the public school or schools of such districts,... and the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free schools, and for the erection and equipment of school buildings therein...

The court of appeals resolved the apparent conflict by holding a school district is not a "political subdivision" within the meaning of article VIII 1–g, and thus the school districts were excluded from the scope of article VIII and could not be forced to participate in the reinvestment zone. The court based its holding on the policy of reconciling apparent repugnancies in the Constitution and giving effect to every part of it. *Hansen v. Jordan,* 145 Tex. 320, 198 S.W.2d 262 (1946). However, there is no case law to support the court of appeals' interpretation of the term "political subdivision", and the legislative history indicates the framers of the amendment intended the term to include school districts.

In construing a constitutional amendment, we look to the intent of the framers and the voters who adopted the amendment. *Farrar, supra.* The Act requires all "taxing units" in the reinvestment zones created under its authority to participate in the plan. The Act refers to the Property Tax Code for the definition of "taxing unit". Section 1.04(12) specifically includes school districts and junior college districts as taxing units. The legislature that adopted the Act, which mandates the inclusion of all "taxing units", was the same legislature that proposed the constitutional amendment, article VIII, which provides for participation by political subdivisions in the tax increment financing plan. The reason for proposing the amendment was to provide a constitutional basis for the Act. *See* S.B. No. 16, § 4, Acts 1981, 67th Leg., 1st C.S., p. 45, ch. 4, which provided:

> This Act [the Tax Increment Financing Act] takes effect only if the constitutional amendment proposed by SJR # 8, 67th Legislature, 1st Called Session, 1981, is adopted.

The framers of article VIII could not have meant to exclude school districts from participation in reinvestment zones. Here, the enabling legislation pursuant to the constitutional amendment requires school district participation, as is evidenced by the Act's reference to the Property Code's definition of "taxing units."

The records of floor debates in the Texas Senate also indicate the term "political subdivisions" was meant to include school districts. On August 3, 1981, Senate Bills 16 and 17 (enacted as articles 1066e and 1066f) were discussed.

SENATOR VALE:

How will the program affect the tax base of the local entities down there, let's say the school districts. If a particular area is set aside for participation in this kind of program, what happens to the tax revenues from that property to the school districts?

SENATOR FARABEE:

The tax revenues are frozen so that they continue to get the same revenues they were getting...

Senator Brown was also concerned about the effect of the Act on school districts and other taxing units:

SENATOR BROWN:

Senator, I'd be interested in finding out... if an area is designated as one of these redevelopment areas by the city, does this cause other taxing authorities, the county that city falls within, hospital districts,... other—school districts and those other taxing entities. Does the city's action and designation cause those others to also come under this and be unable then to tax this property?

SENATOR FARABEE:

They would tax at the frozen value and then could not tax above that. So that they would be bound to that extent...

Debate on Tex. S.B. 16 and 17 on the Floor of the Senate, 67th Leg. (August 3, 1981) (on tape). A question addressed to the former mayor of Port Arthur by one of the Senators shows the legislature did indeed consider the effect of article VIII on school districts:

Q: Would it be possible for a developer to legally go into an open area, get a city incorporated ... and have the effect of freezing the school and county taxes at open land values? ... so you'd be moving possibly several hundred school students into the

district but would not give them an opportunity for a tax base on which to educate these students.

Hearings on Tex. S.B. 16 and 17 before Senate Finance Committee (July 29, 1981) (on tape).

These excerpts show the legislature was aware the Act would affect school districts. Furthermore, this court has held "political subdivisions" includes school districts. In *Lewis v. Independent School District*, 139 Tex. 83, 161 S.W.2d 450, 452 (1942), we held a school district is a "political corporation or a subdivision of the state" within the meaning of article III, § 52 of the Texas Constitution.

The opinion in *Guaranty Corporation v. Armstrong*, 609 S.W.2d 529 (Tex.1980), is also supportive. In that case, this court discussed the attributes of a political subdivision as including: 1) jurisdiction over a portion of the state; 2) elected officials as a governing body; and 3) the power to assess and collect taxes. *Id.* at 531. A school district possesses all of these features.

The school districts also contend the voters were unaware that school districts would be covered by the term "political subdivisions" and that, had they known, they would not have adopted the amendment. However, voters are presumed to have adopted the construction of a word or phrase which has been placed thereon by the courts. *Richey v. Moor*, 112 Tex. 493, 249 S.W. 172, 173 (1923).

The Act is constitutional. The judgment of the court of appeals is reversed. The court of appeals, because it had held the Act unconstitutional, failed to consider several points of error urged by the school district. This cause is remanded to that court for its consideration of the remaining points.

### MOTION FOR REHEARING ON A CAUSE

In motions for rehearing, El Paso Independent School District and El Paso Community College seek clarification of our July 16, 1986 opinion holding the Tax Increment Financing Act, article 1066e, constitutional. Our opinion reversed the judgment of the court of appeals and remanded the cause to that court. —— S.W.2d ——. The school districts raised several points of error before the court of appeals. The court of appeals, after considering only three points of error, held the Act unconstitutional. 698 S.W.2d 248. Therefore, we remanded the cause to the court of appeals to address those points not considered. The points sustained by the court of appeals are:

*Point 1*: The El Paso ordinance was unconstitutional because ad valorem tax revenues of the school district were pledged to be used for non-educational purposes.

*Point 2*: The El Paso ordinance was unconstitutional because ad valorem tax revenues of the school district could not be pledged or used without the consent, and against the express direction, of the respective boards of trustees.

*Point 3*: The El Paso ordinance was unconstitutional because the school districts were not "political subdivisions" within the meaning of article VIII, section 1g(b).

In reversing the court of appeals we wrote primarily on Point 3 above. Thus, the school districts question whether our opinion eliminates Points 1 and 2 from reconsideration on remand. It does. By holding that school districts are political subdivisions, we held that school district ad valorem tax revenues are within the domain of the El Paso Tax Increment Financing plan. Therefore, the Texas Constitution is not offended if such funds are used for non-educational purposes (Point 1) and without the consent of the boards of trustees (Point 2). Tex. Const.Ann. art. VIII § 1–g(b). Accordingly, the motions for rehearing by El Paso Independent School District, El Paso Community College, the Attorney General, and the City of El Paso are overruled.