

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

July 27, 1987

Honorable Carlos Valdez
Nueces County Attorney
901 Leopard, Room 206
Corpus Christi, Texas    78401

Opinion No. JM-758

Re: Conditions under which taxing units are required to make tax increment fund payments beyond three years

Dear Mr. Valdez:

Your letter requesting an opinion from this office reads in part:

> The Tax Increment Financing Act of 1981, article 1066e, V.T.C.S., among other things, provides the authority and procedure for the establishment of a reinvestment zone. Section 10(c) of said article attempts to explain when a taxing unit is not required to pay a tax increment into the zone's fund beyond a certain time limit.
>
>  . . . .
>
> My question is: Under section 10(c) of article 1066e, must the three conditions set out therein exist before a taxing unit would not be required to pay into the zone's fund or is the existence of any one of the three conditions sufficient to satisfy the requirement?

The Tax Increment Financing Act of 1981, declared constitutional by the Texas Supreme Court in City of El Paso v. El Paso Community College District, 729 S.W.2d 296, 29 Tex. Sup. Ct. J. 541 (Tex. 1986) [motion for rehearing overruled, 30 Tex. Sup. Ct. J. 433 (May 13, 1987)], was designed to take effect upon the adoption of an amendment adding article VIII, section 1-g, to the Texas Constitution. See Acts 1981, 67th Leg., 1st C.S., ch. 4, §4, at 45. Cf. Attorney General Opinion MW-337 (1981) (invalidity of earlier tax increment financing statute).

As explained by the supreme court in City of El Paso v. El Paso Community College District, supra:

> Tax increment financing is designed to aid cities and towns in financing public improvements in blighted or underdeveloped areas. Under Article 1066e, a municipality must designate a specific area which, in its opinion, meets the definitional requirements of a 'reinvestment zone.' Tex. Rev. Civ. Stat. Ann. art. 1066e §3(b) (Vernon Supp. 1985). Any increase in ad valorem tax revenues from land within the zone is then committed to the purchase of property, improvement of approved property, or retirement of revenue bonds issued to provide funding for the approved projects.

729 S.W.2d at 296.

Section 10(a) of article 1066e requires each taxing unit that taxes real property within the designated "reinvestment zone" to pay into the "tax increment fund" a certain portion of the taxes it collects there. For definitions of "taxing unit" and "tax increment fund," see subsections 2(6) and 2(9) of the statute. The obligation of taxing units to contribute to the fund expires in a limited time, however, unless certain events occur. Id. §10(c).

Section 10(c) of the statute reads:

> (c) A taxing unit is not required to pay a tax increment into the zone's tax increment fund beyond three years from the date the zone was created, or, if the zone was created before the effective date of this Act, beyond September 1, 1986, unless the following conditions exist or have been met within three years from the date the zone was created, or prior to September 1, 1986, in those zones created before the effective date of this Act:
>
> (1) bonds have been issued for the zone under Section 11 of this Act;
>
> (2) the town or city has acquired property within the zone pursuant to the project plan; or
>
> (3) construction of improvements pursuant to the project plan has commenced in the zone.

Your question presents a matter of statutory construction, which obliges us to search for the intent of the legislature. 53 Tex. Jur.2d Statutes §125 (1964). The act must be construed as a whole and in a harmonious and consistent manner. Lampson v. City of Beaumont, 687 S.W.2d 788 (Tex. App. - Beaumont 1985, no writ).

Section 10 of the 1981 act was extensively revised in 1983 to read as it does now. Subsection (c) was added at that time. See Acts 1983, 68th Leg., ch. 554, at 3213, 3226. You suggest that the intent of the changes may be to excuse a taxing unit from making payments to a tax increment fund unless within three years (1) bonds have been issued, and (2) property has been acquired, and (3) construction of improvements has commenced. Section 10(c) states that a taxing unit is not required to make payments "unless the following conditions exist." That language suggests that a series in the conjunctive will follow. It is our conclusion that a series in the disjunctive follows.

We are of the opinion that the legislature intended to relieve taxing units of the obligation to make payments to the tax increment fund only if none of the three conditions have been met within the time allowed. We are led to this conclusion because the first "condition" is the issuance of bonds, and an examination of the remainder of the act discloses that, although the act permits cities to issue bonds secured by the tax increment fund, they are not required to do so. V.T.C.S. art. 1066e, §11.

Section 9 of the act allows a city to implement project plans by a number of means other than the issuance of bonds, including the direct expenditure of tax increment funds, as provided in section 14 of the act.

We think the powers set out in section 9 sufficiently illustrate that cities and towns are not compelled to issue bonds in developing projects, but may choose other devices for that purpose.

If the act does not require the issuance of bonds to further its purposes, it could not have been the intent of the legislature that taxing units could frustrate that purpose after three years simply because a city had chosen to prosecute its project plan without issuing bonds. Inasmuch as the issuance of bonds "under section 11" is one of the three "conditions" of section 10(c), we do not believe the legislature intended that all of them be met within the three year period in order to obligate taxing units to continue making payments to the tax increment fund.

It is noteworthy that similar punctuation (with the disjunctive, "or") is used in section 3(b) of the act (both versions)[1] as well as in section 10(c). See Gov't. Code §312.012(b) ("punctuation of a

_____

1. Two separate acts amended section 3(b) in 1983. See Acts 1983, 68th Leg., ch. 554, §1, at 3213, 3216-17; Acts 1983, 68th Leg., ch. 841, §5, at 4771, 4790-91.

law does not control or affect legislative intent in enacting the law"). Section 3(b) establishes the criteria an area must meet to be designated as a reinvestment zone, and clearly means to list alternatives.

If our conclusion were in need of further buttress, it is furnished by legislative history. The bill analysis for Senate Bill No. 641 in the Sixty-eighth Legislature, which initiated the 1983 legislation adding section 10(c) to the Tax Increment Financing Act of 1981, states:

> Senate Bill 641 amends Article 1066e by tightening the definition of 'blighted' and requires a 'but for' test. It requires 60 days notice to affected taxing entities and more detailed preliminary plans. It gives counties and school boards as well as other taxing entities representation on the board. <u>It dissolves a zone if redevelopment does not begin within three years.</u> It prevents cities from involving more than 15% of a county or school district's tax base in a zone and allows the county or school board or other entity to negotiate back up to 15% of the increment. (Emphasis added).

Bill Analysis to S.B. No. 641, prepared for House Committee on Urban Affairs, filed in Bill File to S.B. No. 641, Legislative Reference Library. In the portion of the bill analysis examining the proposed legislation section-by-section, it says:

> <u>Section 10.</u> Allows taxing entities to collect their own taxes in the zone and pay over their share into the tax increment fund. Allows entities to keep up to 15% of their increment as negotiated in the planning phase. Provides that the entities must deposit their share into the fund before the 90th day after their delinquency date and sets a penalty for failure to do so. Deletes the old procedure whereby the city collected every entities' taxes in the zone and returned the amount generated by the base to each entity. <u>If the city has not commenced development in the zone within three years, the entities are no longer required to pay their increment into the fund and the zone dissolves.</u> (Emphasis added).

If any of the three "conditions" of section 10(c) are met, development has commenced.

## S U M M A R Y

Section 10(c) of the Tax Increment Financing Act of 1981 relieves taxing units of an obligation to make payments into a tax increment fund only if none of the three conditions listed there have been met within the time allowed.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General