

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 9, 2007

The Honorable Royce West
Chair, Committee on Intergovernmental
    Relations
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0514

Re: Whether a city may designate as a reinvestment zone under Tax Code section 311.005(a)(5) an area that is not "unproductive, underdeveloped, or blighted" if no bonds or notes are issued to finance the area's development or redevelopment (RQ-0442-GA)

Dear Senator West:

The late Senator Frank Madla, your predecessor as Chair of the Senate Committee on Intergovernmental Relations, asked whether a city may designate as a reinvestment zone under Tax Code section 311.005(a)(5) an area that is not "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b) of the Texas Constitution if no bonds or notes are issued to finance the area's development or redevelopment.[1] *See* TEX. CONST. art. VIII, § 1-g(b); TEX. TAX CODE ANN. § 311.005(a)(5) (Vernon Supp. 2006).

Article VIII, section 1-g of the Texas Constitution permits the Legislature to authorize taxing units to grant tax exemptions or tax relief and permits the Legislature to authorize cities and towns to finance improvements to promote development:

> (a) The legislature by general law may authorize cities, towns, and other taxing units *to grant exemptions or other relief from ad valorem taxes on property located in a reinvestment zone* for the purpose of encouraging development or redevelopment and improvement of the property.

> (b) The legislature by general law may authorize an incorporated city or town to issue bonds or notes *to finance the development or redevelopment of an unproductive, underdeveloped, or blighted area within the city or town* and to pledge for repayment of those bonds or

---

[1]*See* Letter from the late Honorable Frank Madla, Chair, Committee on Intergovernmental Relations, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Feb. 6, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

> notes increases in ad valorem tax revenues imposed on property in the
> area by the city or town and other political subdivisions.

TEX. CONST. art. VIII, § 1-g (emphasis added).

Tax Code chapter 311, the Tax Increment Financing Act ("chapter 311"), enacted pursuant to article VIII, section 1-g, authorizes a city to designate an area meeting certain criteria as a reinvestment zone and to finance the improvement of property in the zone directly with tax increments or the proceeds of bonds or notes payable from the tax increments. *See* TEX. TAX CODE ANN. §§ 311.001 (Vernon 2002), 311.003, .004, .014 (Vernon Supp. 2006). "Tax increments" are generally the portion of the taxes derived by a taxing unit due to the difference between the appraised value of all taxable property in the reinvestment zone for that year less the appraised value of the property when the zone was established. *See id.* § 311.012 (Vernon 2002). In other words, they are the taxes attributable to the increased value of the real property in the zone due to its development. *See id.*

Your predecessor asked about a tax increment financing reinvestment zone authorized and established under chapter 311. He suggested that if no bonds or notes are issued to finance the development of property in a tax increment financing reinvestment zone established under section 311.005(a)(5), then article VIII, section 1-g(b) and its requirement that an area be unproductive, underdeveloped, or blighted do not apply to the zone. *See* Request Letter, *supra* note 1, at 1–2; TEX. TAX CODE ANN. § 311.005(a)(5) (Vernon Supp. 2006) (providing for petition requesting that area be designated as a reinvestment zone). Instead, he suggested, the designation of such an area is governed by article VIII, section 1-g(a) authorizing the Legislature to grant exemptions or other relief from ad valorem taxes on property located in a reinvestment zone. *See* Request Letter, *supra* note 1, at 1–2.

## I.    Legal Background

### A.    Constitutional amendment required for tax increment financing

The Tax Increment Financing Act of 1979 (the "1979 Act"),[2] a predecessor of chapter 311, was determined to be facially unconstitutional by this office in Attorney General Opinion MW-337. *See* Tex. Att'y Gen. Op. No. MW-337 (1981). This office determined that the 1979 Act violated the requirement of article VIII, section 1(a) of the Texas Constitution that "[t]axation shall be equal and uniform" by "causing an unequal distribution of the ad valorem tax burden." *Id.* at 5; *see* TEX. CONST. art. VIII, § 1(a). The 1979 Act limited the use of a part of the ad valorem tax revenues—the tax increments—to improving property within the tax increment district rather than for the general support of the city. *See* Tex. Att'y Gen. Op. No. MW-337 (1981) at 5. "[T]he earmarking of tax-increment revenue to pay for improvements within the tax increment zone meant that property within the zone was not contributing its fair share to the city's general fund." HOUSE STUDY GROUP, DAILY

---

[2]*See* Act of May 28, 1979, 66th Leg., R.S., ch. 695, 1979 Tex. Gen. Laws 1661, 1661–67.

FLOOR REPORT, HOUSE COMM. ON CONSTITUTIONAL AMENDMENTS, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981) (referring to 1979 Act).

Article VIII, section 1-g was adopted in 1981, and the adoption of article VIII, section 1-g(b) ensured that the Tax Increment Financing Act of 1981, codified at chapter 311,[3] did not contravene the constitutional mandate that taxation be equal and uniform. *See* TEX. CONST. art. VIII, § 1(a); *City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296, 298 (Tex. 1986) ("The reason for proposing the amendment [providing for participation by political subdivisions in the tax increment financing plan] was to provide a constitutional basis for the [Tax Increment Financing] Act."). The Tax Increment Financing Act of 1981 took effect upon the voters' approval of this amendment to the Texas Constitution.[4]

## B.    Chapter 311 overview and criteria for tax increment reinvestment zone

Under chapter 311, a municipal governing body may designate by ordinance "a contiguous geographic area in the jurisdiction of the municipality . . . to be a reinvestment zone to promote development or redevelopment of the area if the governing body determines that development or redevelopment would not occur solely through private investment in the reasonably foreseeable future." TEX. TAX CODE ANN. § 311.003(a) (Vernon Supp. 2006); *see also id.* § 311.003(b)–(c) (procedures for adopting and contents of authorizing ordinance). The reinvestment zone ordinance must, among other things, establish a tax increment fund[5] for the zone, which is used to finance improvements within the zone. *See id.* §§ 311.004(a)(6), .014(b). The ordinance must include findings that "improvements in the zone will significantly enhance the value of all the taxable real property in the zone and will be of general benefit to the municipality" and that "the area meets the requirements of Section 311.005." *Id.* § 311.004(a)(7)(A)–(B).

Section 311.005(a) provides that in order to be designated as a reinvestment zone, an area must satisfy the following criteria:

> (1) substantially arrest or impair the sound growth of the municipality or county creating the zone, retard the provision of housing accommodations, or constitute an economic or social liability and be a menace to the public health, safety, morals, or welfare in its present condition and use because of the presence of:

---

[3] The Tax Increment Financing Act of 1981 was repealed and recodified as chapter 311 of the Tax Code in 1987. *See* Act of May 1, 1987, 70th Leg., R.S., ch. 191, §§ 1 (adding title 3 to the Tax Code), 12 (repealing former article 1066e, Revised Civil Statutes), 13 (providing that "no substantive change in the law is intended by this Act"), 1987 Tex. Gen. Laws 1410, 1413–21, 1466.

[4] *See* Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 4, § 4, 1981 Tex. Gen. Laws 45, 52 ("This Act takes effect only if the constitutional amendment proposed by S.J.R. No. 8, 67th Legislature, 1st Called Session, 1981, is adopted.").

[5] After a reinvestment zone's creation and for the zone's duration, participating taxing units that tax real property in the reinvestment zone, with certain exceptions, must pay the tax increment into the tax increment fund. *See* TEX. TAX CODE ANN. § 311.013 (Vernon Supp. 2006).

(A) a substantial number of substandard, slum, deteriorated, or deteriorating structures;

(B) the predominance of defective or inadequate sidewalk or street layout;

(C) faulty lot layout in relation to size, adequacy, accessibility, or usefulness;

(D) unsanitary or unsafe conditions;

(E) the deterioration of site or other improvements;

(F) tax or special assessment delinquency exceeding the fair value of the land;

(G) defective or unusual conditions of title;

(H) conditions that endanger life or property by fire or other cause; or

(I) structures, other than single-family residential structures, less than 10 percent of the square footage of which has been used for commercial, industrial, or residential purposes during the preceding 12 years, if the municipality has a population of 100,000 or more;

(2) be predominantly open and, because of obsolete platting, deterioration of structures or site improvements, or other factors, substantially impair or arrest the sound growth of the municipality or county;

(3) be in a federally assisted new community located in the municipality or county or in an area immediately adjacent to a federally assisted new community; or

(4) Deleted by Acts 1989, 71st Leg., ch. 1106, § 27.

(5) be an area described in a petition requesting that the area be designated as a reinvestment zone, if the petition is submitted to the governing body of the municipality or county by the owners of property constituting at least 50 percent of the appraised value of the property in the area according to the most recent certified appraisal roll for the county in which the area is located.

*Id.* § 311.005(a).

While subsections (a)(1), (2), and (3) of section 311.005 set out certain "unproductive, underdeveloped, or blighted" required conditions for land eligible to be included in a proposed reinvestment zone, subsection (a)(5) contains no similar requirements. *Compare id.* § 311.005(a)(5), *with id.* § 311.005(a)(1)–(3). *But see* Tex. Att'y Gen. Op. No. JC-0152 (1999) at 6 (construing section 311.005(a)(5) to permit the designation of only those areas that the city determines are "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b)).

## II.    Analysis

As we have already noted, your predecessor suggested that when no bonds or notes are issued, article VIII, section 1-g(b) and its requirement that an area be unproductive, underdeveloped, or blighted do not apply to an area designated as a tax increment financing reinvestment zone under section 311.005(a)(5) because the designation of such an area can be governed by article VIII, section 1-g(a) instead. *See* Request Letter, *supra* note 1, at 1–2. This suggestion is premised on the view that both subsections (a) and (b) of section 1-g authorize tax increment financing reinvestment zones and that subsection (b)'s criteria apply only if the financing occurs through the issuance of bonds or notes. But, as our analysis will show, section 1-g(a) permits the Legislature to authorize tax exemptions or other tax relief. Only section 1-g(b) permits the Legislature to authorize tax increment financing, which does not involve tax exemption or tax relief.

### A.    Literal language of section 1-g(a) and (b)

In construing article VIII, section 1-g(a) and (b), we first consider the literal text and its plain meaning. *See Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000) (stating that when interpreting the state constitution, a court looks at its literal text and gives effect to its plain language). Additionally, we construe its words as they are commonly understood. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) (stating that courts rely on the constitution's literal text and construe its words as they are generally understood).

#### 1.    Section 1-g(a)

Article VIII, section 1-g(a) permits the Legislature to "authorize cities, towns, and other taxing units to grant exemptions or other relief from ad valorem taxes on property located in a reinvestment zone for the purpose of encouraging development." TEX. CONST. art. VIII, § 1-g(a). Subsection (a) does not mention tax increments or their use. Based on the literal language, section 1-g(a) only authorizes tax exemption or other tax relief. *See Stringer*, 23 S.W.3d at 355.

Tax exemption means that no taxes are due or paid. *See William Clairmont, Inc. v. State*, 261 N.W.2d 780, 784 (N.D. 1977) (stating that "the word 'exempt' is used to signify that no tax is payable in the first instance"); BLACK'S LAW DICTIONARY 1474 (7th ed. 1999) (defining "tax-exempt" as "[n]ot legally subject to taxation"). No court or attorney general opinion has construed the term "tax relief" as used in article VIII, section 1-g(a). Based on established principles of statutory construction, however, we must presume that the term means something related to eliminating or reducing ad valorem taxes. *See Spradlin*, 34 S.W.3d at 580; BLACK'S LAW

DICTIONARY 1293 (7th ed. 1999) (defining "relief" as "[a]id or assistance given to those in need, esp., financial aid provided by the state").

But tax increment financing does not involve exempting property from ad valorem taxation or providing other relief from such taxation. *See* TEX. TAX CODE ANN. §§ 311.012 (Vernon 2002) (determination of tax increment amount), 311.014 (Vernon Supp. 2006) (use of tax increment fund). Under a tax increment financing scheme, a city designates a specific area as a reinvestment zone, and "[a]ny increase in ad valorem tax revenues from land within the zone is then committed to the purchase of property, improvement of approved property, or retirement of revenue bonds issued to provide funding for the approved projects." *City of El Paso*, 729 S.W.2d at 296. Thus property in the reinvestment zone does not escape taxation or enjoy reduced taxation; rather, the tax is imposed on the entire value of the property, but a portion of the tax revenues derived from the property is dedicated to improving the reinvestment zone property rather than for the general support of the taxing authority. *See* TEX. CONST. art. VIII, § 1-g(b) (authorizing use of "increases in ad valorem tax revenues imposed on property in the area by the city or town and other political subdivisions" to make property improvements); TEX. TAX CODE ANN. §§ 311.012 (Vernon 2002) (determination of tax increment amount), 311.013 (Vernon Supp. 2006) (collection and deposit of tax increment), 311.014 (use of tax increment fund) (Vernon Supp. 2006); *see also* Tex. Att'y Gen. LO-89-031, at 3 (stating that property in a tax increment reinvestment zone does not escape taxation; tax is imposed on the entire value of the property). If the reinvestment zone property were to be exempted or otherwise provided tax relief, there would be no or little tax increments to fund the improvements.

### 2.     Section 1-g(b)

Section 1-g(b), on the other hand, specifically references tax increments, linking its use to bonds or notes:  It authorizes a "city or town to issue bonds or notes to finance the development . . . of an unproductive, underdeveloped, or blighted area" and to pledge to those bonds or notes "increases in ad valorem tax revenues imposed on property in the area by the city or town and other political subdivisions," namely, the tax increments. TEX. CONST. art. VIII, § 1-g(b); *see also* HOUSE COMM. ON CONSTITUTIONAL AMENDMENTS, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981) ("'tax increments' (i.e.[,] increases in tax revenues due to enhancement of taxable property")).  The specific reference to bonds and notes is not unusual in that the issuance of such obligations is the common method for obtaining funds to finance the up-front development of the area; the tax increments are available only after and as a result of the development. *See* BLACK'S LAW DICTIONARY 1474 (7th ed. 1999) (defining "tax increment financing" as "[a] technique used by a municipality to finance commercial developments [usually] involving issuing bonds to finance land acquisition and other up-front costs, and then using the additional property taxes generated from the new development to service the debt"); *see also* ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS APPEARING ON NOVEMBER 3, 1981, BALLOT, TEX. LEG. COUNCIL, INFORMATION REPORT NO. 81-3, at 3 (Sept. 1981) ("The increases in property taxes resulting from redevelopment are called tax increments and occur because of the increases in taxable values of redeveloped property.").

By its terms, section 1-g(b) specifically permits the Legislature to authorize tax increment financing but only in an area that is "unproductive, underdeveloped, or blighted." *See* TEX. CONST. art. VIII, § 1-g(b); *Stringer*, 23 S.W.3d at 355; *Walker v. Baker*, 196 S.W.2d 324, 327 (Tex. 1946) (stating that when the constitution grants a power, and where the manner of exercising that power is prescribed, it is implied that the prescribed manner excludes all others).

### 3.    Financing method

Our conclusion that only section 1-g(b) authorizes tax increment financing means that its criteria apply regardless of whether the tax increment reinvestment zone property is financed with bond or note proceeds or by some other method. A city need not issue bonds or notes to finance improvements in a tax increment reinvestment zone. *See* TEX. TAX CODE ANN. §§ 311.010(b), .013(b), .014 (Vernon Supp. 2006); *City of El Paso*, 729 S.W.2d at 296. A city may finance improvements in a reinvestment zone either (1) directly with tax increment revenues, or (2) indirectly with the proceeds of bonds or notes or other agreements secured by the tax increment revenues. *See* TEX. TAX CODE ANN. §§ 311.010(b) (Vernon Supp. 2006) (authorizing agreements pledging tax increment fund revenues to pay project costs), 311.013(b) (requiring taxing units to deposit tax increments into tax increment fund), 311.014 (authorizing payment of bonds or project costs from tax increment fund); *see also City of El Paso*, 729 S.W.2d at 296 ("Any increase in ad valorem tax revenues from land within the zone is then committed to the purchase of property, improvement of approved property, or retirement of revenue bonds [or notes] issued to provide funding for the approved projects."). Thus chapter 311 permits but does not require a city to issue bonds or notes to make or finance improvements. *See* TEX. TAX CODE ANN. § 311.015 (Vernon Supp. 2006) ("A municipality creating a reinvestment zone *may* issue tax increment bonds or notes, the proceeds of which may be used to pay project costs . . . .") (emphasis added); Tex. Att'y Gen. Op. No. JM-758 (1987) at 3 (stating that the act allows a city to implement project plans by a number of methods other than issuance of bonds, including direct expenditures of tax increment funds).

But a city generally cannot make significant improvements in a reinvestment zone without undertaking some type of financing. Even if bonds or notes are not issued, it is still necessary to obtain the lump sum from another source to make the improvements because the tax increments come into existence and are available annually only after the tax value of the reinvestment zone property increases *as a result* of making the improvements. *See* TEX. TAX CODE ANN. § 311.012 (Vernon 2002) (determination of amount of tax increment); *City of El Paso*, 729 S.W.2d at 296 (describing tax increment financing). As we understand it, while no bonds or notes will be issued in this instance, the improvements will nevertheless be financed over time: The developers of the reinvestment zone property will pay for the improvements, and the city designating the reinvestment zone will, pursuant to a promissory note or similar agreement, repay the developer's loan with the available tax increments.[6]

---

[6]*See* Memorandum Brief from Michael D. Bernard, City Attorney, City of San Antonio, to Honorable Greg Abbott, Attorney General of Texas, at 4–5 (Apr. 10, 2006) (on file with the Opinion Committee).

Thus, based on the literal text, section 1-g(a) authorizes tax exemption and tax relief, and section 1-g(b) authorizes tax increment financing. Because the use of tax increments does not involve exempting property from taxation or providing other relief from taxation, section 1-g(a) does not authorize tax increment financing. Tax increment financing and tax increment reinvestment zones are authorized only by section 1-g(b), and its use is limited to an area that is "unproductive, underdeveloped, or blighted."

## B. Legislative history

The amendment's legislative history and the circumstances surrounding its adoption support the construction that section 1-g(a)'s tax exemption or tax relief scheme is distinct from section 1-g(b)'s tax increment financing scheme. *See Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997) (stating that a court construing a constitutional provision may consider, in addition to the literal text, "the purpose of the constitutional provision, the historical context in which it was written, the collective intent, if it can be ascertained, of the framers and the people who adopted it"); *Kirby Lumber Corp. v. Hardin Indep. Sch. Dist.*, 351 S.W.2d 310, 312 (Tex. 1961) ("Constitutional provisions must be construed in the light of conditions existing at the time of adoption, and it does not lie within the power of the Legislature to change their meaning, or to enact laws in conflict therewith.").

The Sixty-seventh Legislature, which proposed article VIII, section 1-g in Senate Joint Resolution 8, also adopted the Tax Increment Financing Act of 1981 and the Property Redevelopment and Tax Abatement Act (codified at chapter 312 of the Tax Code) implementing the constitutional amendment.[7] A Texas Legislative Council analysis of the proposed amendment states that the amendment "would authorize the use of *tax increment financing* to encourage the redevelopment of property in *economically distressed areas*" and would also authorize "the local adoption of exemptions from property taxation to encourage redevelopment." ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS APPEARING ON NOVEMBER 3, 1981, BALLOT, TEX. LEG. COUNCIL, INFORMATION REPORT No. 81-3, at 4 (Sept. 1981) (emphasis added). And the analysis further explains:

> Senate Bill 17, the Property Redevelopment and Tax Abatement Act, *implements Subsection (a) of Section 1-g.* It would authorize . . . cities or towns to exempt all or part of the value of residential, commercial, or industrial property in certain designated reinvestment zones. To qualify for the exemption, the property would have to be economically impaired, be predominantly open or otherwise impaired so as to arrest redevelopment, or be located in or adjacent to areas qualifying for certain federal assistance.
>
> . . . .

---

[7]*See* Tex. S.J. Res. 8, 67th Leg., 1st C.S., 1981 Tex. Gen. Laws 295; Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 4, 1981 Tex. Gen. Laws 45, 45–53 (Senate Bill 16); Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 5, 1981 Tex. Gen. Laws 53, 53–57 (Senate Bill 17).

>           Senate Bill 16, the Texas Tax Increment Financing Act of
> 1981, will also take effect if the proposed amendment is adopted.
> This act would *implement Subsection (b) of Section 1-g,* authorizing
> a city or town to designate an area within its jurisdiction as a
> reinvestment zone, redevelop property in the zone, and finance the
> redevelopment by bonds or notes payable solely from tax increments
> from the reinvestment zone.

*Id.* at 4–6 (emphasis added).

Similarly, the bill analysis from the House Committee on Constitutional Amendments states that:

> The implementing legislation for subsection (b) of SJR 8, SB 16,
> . . . would allow cities or towns to *designate areas which are
> deteriorating or unproductive as "reinvestment zones"* and finance
> redevelopment projects in these zones through tax increment
> financing. . . .
>
> The implementing legislation for subsection (a) of SJR 8, SB 17,
> authorizes cities or towns to create reinvestment zones for the
> purpose of residential or industrial tax abatement. The city or town
> *must find that the area is deteriorating or unproductive before
> designating it as a reinvestment zone.*

HOUSE COMM. ON CONSTITUTIONAL AMENDMENTS, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981) (emphasis added); *see also* SENATE FINANCE COMM., BILL ANALYSIS, Tex. C.S.S.J. Res. 8, 67th Leg., 1st C.S. (1981) (stating that the first part of the amendment "is new and is offered as a preparatory step to making Texas businesses and low income citizens eligible for Federal Tax breaks under the Kemp-Garcia bill," and the second part repeats the failed 1977 constitutional amendment authorizing tax increment financing).

In sum, the Legislature that adopted both article VIII, section 1-g(a) and (b) and the implementing legislation, intended subsection (a) to authorize tax exemption or tax relief such as the tax abatements authorized in the Property Redevelopment and Tax Abatement Act, codified at Tax Code chapter 312, and subsection (b) to authorize tax increment financing as provided in the Tax Increment Financing Act of 1981, codified at Tax Code chapter 311. *See Kirby Lumber Corp.,* 351 S.W.2d at 312; *see also City of El Paso,* 729 S.W.2d at 298 (construing the term "political subdivisions" in article VIII, section 1-g(b) consistent with the 1981 implementing legislation to include school districts because "the reason for proposing the amendment was to provide a constitutional basis for the [Tax Increment Financing] Act").

## III.    Conclusion

Because only section 1-g(b) of the Texas Constitution enables the use of tax increments to make improvements in a particular area—the reinvestment zone—as authorized under chapter 311, its "unproductive, underdeveloped, or blighted" requirement applies to any designation of an area as a tax increment financing reinvestment zone, including an area subject to petition under Tax Code section 311.005(a)(5).    Therefore, we conclude that a city may not designate an area as a reinvestment zone under Tax Code section 311.005(a)(5) unless the area is "unproductive, underdeveloped, or blighted" even if its plan of tax increment financing does not include issuance of bonds or notes.

Given our construction that only Texas Constitution article VIII, section 1-g(b) permits tax increment financing, we do not consider whether the "unproductive, underdeveloped, or blighted" requirement applies to a reinvestment zone designated under section 1-g(a).

## S U M M A R Y

A city may not designate an area as a reinvestment zone under Tax Code section 311.005(a)(5) unless the area is "unproductive, underdeveloped, or blighted" within the meaning of article VIII, section 1-g(b) of the Texas Constitution, even if the area's plan of tax increment financing does not include issuance of bonds or notes.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee