ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

June 18, 2012

The Honorable Joseph C. Pickett
Chair, Committee on Defense and Veterans'
    Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0953

Re: Authority of a county to issue bonds pursuant
to article VIII, section 1-g(b), Texas Constitution
(RQ-1040-GA)

Dear Representative Pickett:

You ask three questions related to whether a county may issue tax increment financing bonds in the same manner as a city under article VIII, section 1-g(b) of the Texas Constitution.[1] The Tax Increment Financing Act ("the Act") is found in Chapter 311 of the Tax Code. TEX. TAX CODE ANN. § 311.001 (West 2008). It was enacted to aid "in financing public improvements in blighted or underdeveloped areas." *City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296, 296 (Tex. 1986). The Act authorizes certain public entities to designate areas as "reinvestment zones" after first determining that the areas meet specific statutory requirements. *See* TEX. TAX CODE ANN. §§ 311.003 (West Supp. 2011) ("Procedure for Creating Reinvestment Zone"); .005 ("Criteria for Reinvestment Zone"). Increases in ad valorem tax revenues from property within the zone are then committed to promoting development or redevelopment of the zone area. *See id.* § 311.011(c)(6) (requiring a reinvestment zone financing plan to describe the methods for financing project costs, including the percentage of tax increment to be derived from property taxes). The Act authorizes municipalities designating a reinvestment zone to "issue tax increment bonds or notes, the proceeds of which may be used to . . . pay project costs for the reinvestment zone on behalf of which the bonds or notes were issued." *Id.* § 311.015(a). Apart from issuing bonds and notes, the Act also authorizes improvements in a reinvestment zone to be financed directly with tax increment revenues or with the proceeds of other financial arrangements secured by tax increment revenues. Tex. Att'y Gen. Op. No. GA-0514 (2007) at 7 (noting that "[a] city need not issue bonds or notes to finance improvements in a tax increment reinvestment zone"); TEX. TAX CODE ANN. § 311.010(b) (West Supp. 2011) (authorizing agreements pledging tax increment fund revenues to pay project costs).

---

[1]Letter from Honorable Joseph C. Pickett, Chair, Comm. on Def. and Veterans' Affairs, to Honorable Greg Abbott, Tex. Att'y Gen. at 2 (Feb. 8, 2012), http://www.texasattorneygeneral.gov/opin ("Request Letter").

When the Act was adopted in 1981, the Legislature allowed only an incorporated city or town to "designate an area a reinvestment zone for tax increment financing."[2] Alongside the Act, the Legislature proposed article VIII, section 1-g(b) of the Constitution, which voters adopted later that year. Article VIII, section 1-g(b) states:

> The legislature by general law may authorize an incorporated city or town to issue bonds or notes to finance the development or redevelopment of an unproductive, underdeveloped, or blighted area within the city or town and to pledge for repayment of those bonds or notes increases in ad valorem tax revenues imposed on property in the area by the city or town and other political subdivisions.

TEX. CONST. art VIII, § 1-g(b).

In 2005, the Legislature amended certain provisions of the 1981 Act, which is now codified at chapter 311 of the Tax Code, to similarly allow a county to designate an area within the county to be a "reinvestment zone."[3] However, when the Legislature amended the Act, it did not authorize counties to issue tax increment bonds or notes. Nor did it propose a constitutional amendment that would have allowed the Legislature to expressly authorize counties to issue tax increment financing bonds. Six years later, in 2011, the Eighty-second Legislature proposed a constitutional amendment that would have amended the language in article VIII, section 1-g(b) and thereby authorized the Legislature to enact laws allowing counties to issue tax increment financing bonds.[4] However, in November 2011, voters rejected the proposed amendment. In light of the voters' rejection of the constitutional amendment, you first ask whether a county may "issue bonds in the same manner as a city or town under article VIII, section 1-g(b) of the Texas Constitution." Request Letter at 2.

Regardless of whether a constitutional amendment is necessary for counties to issue tax increment bonds, an issue we do not address here, the Legislature has not granted counties such authority. Texas courts have long held that, without statutory authority, a county has no implied authority to issue bonds. *Lasater v. Lopez*, 217 S.W. 373, 376 (Tex. 1919) (explaining that "[w]ithout special authority, a court charged with the administration of the business affairs of a county is without the power to issue negotiable securities" and defining county bonds as "negotiable securities"); *Lopez v. Ramirez*, 558 S.W.2d 954, 957 (Tex. Civ. App.—San Antonio 1977, no writ); *see also* Tex. Att'y Gen. Op. No. JC-0068 (1999) at 9 (noting that bonds "can only be issued for the purposes and in the manner expressly authorized"). Thus, a county may not issue tax increment financing bonds under chapter 311 of the Tax Code.

---

[2]Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 4, § 3, 1981 Tex. Gen. Laws 45, 46. The Tax Increment Financing Act was recodified as Chapter 311 of the Tax Code in 1987. Act of May 1, 1987, 70th Leg., R.S., ch. 191, § 1, 1987 Tex. Gen. Laws 1410, 1413–21.

[3]Act of May 29, 2005, 79th Leg., R.S., ch. 1094, §§ 36–48, 2005 Tex. Gen. Laws 3591, 3607–14.

[4]Tex. H.R.J. Res. 63, 82d Leg., R.S. (2011).

Your second question asks whether "the reference to 'other political subdivisions' in article VIII, section 1-g(b) includes counties, and if so does that provide sufficient authority for a tax increment collected by a county to be pledged to secure bonds." Request Letter at 2. Article VIII, section 1-g(b) authorizes an incorporated city or town "to pledge for repayment of those bonds or notes increases in ad valorem tax revenues imposed on property in the area by the city or town and *other political subdivisions*." TEX. CONST. art. VIII, § 1-g(b) (emphasis added). In *City of El Paso v. El Paso Community College District*, the Texas Supreme Court addressed which entities were "political subdivisions" for purposes of article VIII, section 1-g(b). 729 S.W.2d at 298. Concluding that a school district was a political subdivision, the Supreme Court explained the general attributes of any political subdivision: "1) jurisdiction over a portion of the state; 2) elected officials as a governing body; and 3) the power to assess and collect taxes." *Id.* at 299. A county possesses all of these features. Consequently, under the Supreme Court's test, Texas counties qualify as political subdivisions for purposes of article VIII, section 1-g(b). *Cf. Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (describing a county as a political subdivision in the context of sovereign immunity).

However, to respond to the remainder of your question, we turn to article VIII, section 1-g(b) and section 311.015, which expressly authorize only incorporated cities or towns—not counties—to issue bonds or notes to finance a reinvestment zone. TEX. CONST. art. VIII, § 1-g(b) (emphasis added). The Act authorizes "[e]ach taxing unit that taxes real property located in a reinvestment zone" to pay into the tax increment fund for the zone a certain amount agreed to between the taxing unit and the governing body that initially designated the zone. *See* TEX. TAX CODE ANN. § 311.013(a)–(b), (f) (West Supp. 2011). Thus, a county may deposit money into the tax increment fund, which can then be used "to satisfy claims of holders of tax increment bonds or notes issued for the zone, to pay project costs for the zone, . . . or to repay other obligations incurred for the zone." *Id.* § 311.014(b) (West 2008). But the authority to levy taxes that support a tax increment fund is distinct from the authority to issue bonds. Furthermore, the statute provides that only a "*municipality* may pledge irrevocably all or part of the [tax increment] fund for payment of tax increment bonds or notes," including any funds deposited by a county or another political subdivision. *Id.* § 311.015(b) (West Supp. 2011) (emphasis added). The power to issue tax increment financing bonds and to pledge the tax increment fund as security lies solely with the municipality. The county's authority to pay into the tax increment fund does not authorize the county to issue bonds or to unilaterally pledge any part of the tax increment fund as security for a municipality's tax increment financing bonds.

Your final question asks, "[i]f the reference to 'other political subdivisions' in article VIII, section 1-g(b) does not include a county, which taxing entities does it include?" Request Letter at 2. Because we conclude that "political subdivisions" as used in article VIII, section 1-g(b) includes counties, we do not address your third question further.

## S U M M A R Y

The Legislature has not authorized a county to issue tax increment financing bonds as a city may under chapter 311 of the Tax Code.

A county qualifies as a "political subdivision" as that term is used in article VIII, section 1-g(b). A municipality has exclusive authority to pledge all or part of a tax increment fund, including any tax increments deposited by a county, for payment of tax increment bonds or notes. A county may not issue tax increment financing bonds or unilaterally pledge any part of the tax increment fund.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee